Bobb v. Woodward et al.

---

JOHN H. BOBB, Respondent, *v.* E. K. WOODWARD AND ERASTUS SMITH, Appellants.

1.  *Assignment, fraudulent — Action by creditors touching — Estoppel* in pais. —Where the motives of the assignor in making an assignment of his stock in trade were evidently to hinder and delay his creditors, and the assignee had notice of such motives, although the designs of the assignee may not have been fraudulent, yet the creditors would be at liberty, within the period allowed by the statute of limitations, to treat the sale as a nullity, as against their demands, and by attachment, or other proper proceedings, to subject the property thus sold to the payment of their debts.  But where the creditors fail to pursue such a course, but lie quietly by and suffer the assignee to carry on the business in his own name and with his own money and credit, to sell out and replenish the stock, and engage in other transactions based on their acquiescence, the sale becomes as valid as though no fraudulent motives had entered into it.  The assignment was not such a transaction as made the assignee a mere trustee for the assignor.  As between the parties it passed the title.

2.  *Trust — Fraudulent transfer and purchase — Conveyance to family.*— It has become the settled law of Missouri, that upon lands held by a third person in fraud of creditors for the benefit of the debtor, or fraudulently purchased with the money of the debtor and conveyed to his family, there is a resulting trust to the debtor for the benefit of the creditors, which may be sold on execution.

3." *Limitations — Execution sale — Trustee, possession of, when adverse.*— In suit by the purchaser of land at an execution sale, whereby it is sought to make a third party, who had previously purchased the land of the execution-defendant, a trustee thereof against his will, his possession must be treated as adverse to that of his vendor, from the time possession is taken under the purchase sought to be avoided.

4. *Limitations — Construction of statute.*— The operation of section 10 of the limitation act (Wagn. Stat. 918) is confined to personal actions.

*Appeal from St. Louis Circuit Court.*

*C. C. Whittelsey,* for appellants.

*Cline, Jamison & Day,* for respondent.

BLISS, Judge, delivered the opinion of the court

At a sale by execution upon a judgment in favor of one Owings against defendant Woodward, the plaintiff, on the 30th of January, 1867, purchased Woodward's interest in certain real estate in St. Louis, the legal title of which was in defendant Smith. The plaintiff presents his petition in equity to set aside a previous sale by Woodward to Smith as fraudulent in fact, and to vest the title in the plaintiff. This is the same case which was once before this court and reported in 42 Mo. 482, and is now here upon an amended petition with a large amount of testimony.

The petition, after alleging the purchase at sheriff's sale, represents that defendant Woodward, being in failing circumstances, employed defendant Smith, his brother-in-law, and a resident of Hartford, Connecticut, to compromise his debts; and that, failing in that, they had entered into a conspiracy to defraud said Woodward's creditors. It describes in detail the steps to that end pursued by the parties, and avers that on the 8th of December, 1860, defendant Woodward, with his paper under protest and with suits pending against him, wrote to said Smith to come to his relief; that he came on, and, aware of said Woodward's condition, entered into a scheme with him by which all his property should be transferred to said Smith, to be held for the use and benefit of said Woodward, and to compel a compromise by the creditors; and in pursuance of said scheme, that Woodward's stock of goods of the value of $20,000, with book accounts, etc., was transferred

to said Smith for the nominal sum of $11,360, but that none of this amount was paid or intended to be paid. The petition describes the manner of the pretended payment, showing that Smith, on behalf of said Woodward and with his funds, purchased at twenty-five cents on the dollar claims against him amounting on their face to said sum of $11,360, and turned them over as full payment for said goods.

After thus describing the manner in which said Smith became the nominal owner of the store, by way of inducement and support, as I suppose, of the subsequent allegations in relation to the property in dispute, the petition further sets out, in substance, that said Woodward, on the 22d of April, 1861, without consideration, conveyed to said Smith said real estate, which was encumbered at the time by two trust deeds—one to one Curtis as trustee for one Brown, to secure the payment of $3,000 with interest notes, and one to C. C. Whittelsey as trustee of Crawford & Gray, to secure a note of $1,037; that the notes secured by said trust deed have been paid in full out of the proceeds of said store, but for fraudulent purposes have been assigned to defendant Smith, who holds them as a valid lien upon the premises; and that the said trust deeds, together with the conveyance from Woodward, are a cloud upon the plaintiff's title, which he desires to have removed.

Defendant Smith, answering, is informed that defendant Woodward, in December, 1860, became liable to said Owings as accommodation indorser, and that judgment was obtained in March, 1866; knows nothing of the levy and sale; denies all fraud and conspiracy, and avers that with his own money, and without the knowledge of Woodward, he purchased debts against him at twenty-five cents on the dollar, and with those debts purchased the stock of goods in the book store at their fair value. He denies that he has carried on the business for Woodward's benefit, or that Woodward has any interest in the store; and with regard to the real estate in controversy, claims that out of his own means he paid said Woodward $1,000 for his equity of redemption, which was its full value; and that he has purchased the debts secured by the trust deeds and taken an assignment of them to

himself. He also denies the plaintiff's equity, and claims the benefit of the statute of limitations.

From an examination of the evidence it appears that Woodward, in the latter part of 1860, became embarrassed in his business, employed an agent to compound with his creditors, and that he wrote to defendant Smith requesting him to aid the agent in the matter. Failing to effect the compromise, he again wrote to Smith stating his embarrassments ; that while his largest creditors were willing to compromise, others refused; asking him to go to New York, Philadelphia, etc., for him, and try to perfect the arrangements, giving the names of some he was to see, and saying, "if you cannot arrange with them, come right on here and buy me out on terms that you will be safe in, etc., and they will be forced to our terms." He sets forth the peril he is in from pending suits, and fears that everything will be swallowed up unless he comes out to protect him. This letter was not answered, but Smith at once proceeded to buy up Eastern claims against Woodward at twenty-five cents on the dollar, to the amount of over $7,000, and came on to St. Louis and bought out Woodward's store. He turned over in part payment, at their face, the claims he had so purchased, and gave his notes for the balance, which were paid by other claims against Woodward subsequently purchased. It does not appear that the money used by Smith in making these purchases belonged to Woodward, or was in any way furnished by him, but, on the contrary, they both testified that Smith used therefor his own means ; nor does it appear that Smith acted as the agent of the failing debtor, or was governed by his directions, further than the natural inference that his action was prompted by the letter referred to. But if the matter were directly in issue, there is evidence enough to warrant a finding by the court that the whole transaction, the purchase of the claims against Woodward and with them of his stock in trade, were made to hinder and delay his creditors in the collection of their debts, and compel them to compromise their claims. There is no direct testimony of Smith's designs in that regard, but there is abundant evidence that such were Woodward's motives, of which Smith had notice; and his sympathy in the object must

be inferred. The creditors, then, were at liberty, within the period allowed by the statute of limitations, to treat the sale as a nullity as against their demands, and by attachment or other proper proceedings, to subject the property thus sold to the payment of their debts. (Potter v. Stevens, 40 Mo. 229.) This course they did not pursue, but lay quietly by, suffered Smith to carry on the business in his own name and with his own money and credit, to sell out all or the greater portion of the stock thus purchased, and make large additions to the same, to take a partner in the business, and engage in other transactions based upon their acquiescence. The sale, then, of the goods and of the stand where the trade was carried on, being in its inception good as against Woodward and all others except creditors, and they acquiescing, it became as valid as though the fraudulent motive had never entered into it.

This proceeding, it is true, is not intended to affect the title to the goods, but the plaintiff bases in part his right to the property in question upon the character of that sale. He has accordingly set it out in his petition, and nearly all his evidence was offered in relation to it. Having by that evidence fastened the fraudulent motive upon that sale, the plaintiff then proved that the money expended, both in purchasing Woodward's equity of redemption and in taking up the trust deeds, was taken from the store, claiming thus to have sustained his charge that the property was purchased and redeemed with the money of Woodward. It is true that if that store and its proceeds were actually Woodward's, the real estate purchased with them was also his. If, however, they had become Smith's, he could use them as he saw fit. While the evidence develops a fraudulent object in the sale, it does not sustain the charges of the petition that the store still belonged to Woodward, and was carried on with his means and for his sole benefit. The creditors, had they chosen to do so, had a right to set aside the sale and subject the specific property sold to the payment of their debts, but it was not such a transaction as made Smith a mere trustee for Woodward; not such a transaction as did not affect the ownership of the property. As between the parties it passed the title, and, from lapse of time, that title cannot now be

disturbed. And if not directly, certainly not collaterally. The plaintiff is not a creditor seeking to subject goods fraudulently sold to the payment of a debt, or even to compel the purchaser to satisfy such debts from the proceeds of such goods, and it is going a long way back to charge fraud in the sale of the land to Smith, because alone of improper motives which entered into another sale which is not to be disturbed. The money then paid by Smith for the property in question must be treated as his own, and if he is to be made a trustee for Smith's creditors it must be because of other considerations.

Upon considering the sale of the equity of redemption to Smith, the fraud stands out more clearly than in the transfer of the store. The purchase by Smith was made to prevent the subjection of the property to the claims of creditors, and also for the benefit of the debtor. The facts surrounding the sale admit of no other conclusion. The conveyance was made without the knowledge of Smith, and upon consultation alone with his agent, who was simply an agent in the management of the store and sale of the goods, and not for dealing in real estate. It was made while creditors were pressing and suits were pending that would soon ripen into judgments, and the declarations of Woodward upon various occasions show the *animus* of the transaction. In accepting the deed when brought to his knowledge, Smith certainly could acquire no better title than though he directly negotiated for it; and it must be held that a purchaser, though for a good consideration, with knowledge that the sale is made for the purpose of defrauding creditors, will hold subject to the rights of those creditors. He thus participates in the intent, and though his motive may be mere gain, he enables his vendor to work a fraud. (1 Burr. 474; 7 B. Monr. 369; Edgell v. Lowell, etc., 4 Verm. 412.) The purchase of this equity of redemption must have been made not only with knowledge of Woodward's motives, but for his benefit. The testimony of Smith shows a singular relation to the transaction for one who purchases in the ordinary course of trade. He was, in the first place, ignorant of the transfer; after accepting it he paid no attention to the taxes, collected no rents, and made no agreement in relation to them, and

Woodward has continued to occupy as before the sale. Friend-ship alone is not sufficient to account for these facts, and, in connection with others, they furnish irresistible evidence that the sale was made to enable Woodward to keep possession as against his creditors. And besides, this transaction is colored by the motives influencing the original sale of the goods. Though that sale may not now be impeached, yet it is proper to consider it, as helping to color subsequent transactions connected with it.

Whatever our conclusion in regard to the sale of the equity of redemption, the character of that sale cannot affect the prior encumbrances upon the property. Their honesty is not disputed, and their payment and transfer in no way tends to defraud other creditors. In any event they were a lien upon the property, and their transfer to Smith is a totally different transaction from his purchase of Woodward's interest. He should be allowed to hold these claims, unless we are to treat the money paid for them as the money of Woodward, which, as we have seen, cannot be done. Smith, then, purchased honest encumbrances with his own money, and to that extent holds a claim upon the land. The interest of Woodward, fraudulently conveyed to Smith, made him so far a trustee for the benefit of Woodward's creditors, and the purchase at sheriff's sale takes this interest and no more, and hence takes subject to these encumbrances.

The plaintiff seeks to charge Smith as trustee holding the title of the property, but upon trust resulting to the benefit of the creditors of Woodward. It has become a settled law in Missouri that upon lands held by a third person in fraud of creditors, for the benefit of the debtor, or fraudulently purchased with the money of the debtor and conveyed to his family, there is a resulting trust to the debtor for the benefit of the creditors, which may be sold upon execution. (Herrington v. Herrington, 27 Mo. 560.) It is held to be such an equitable estate as is comprehended in the language of the statute, which subjects to sale upon execution "all real estate whereof the defendant, or any person for his use, was seized at law or in equity."

There is little doubt that the interest of both debtors and cred-itors would be better subserved if, in all these resulting trusts, the

creditor were required to ascertain by judicial decision the actual interest of the debtor in the property, before offering it for sale. The charge of fraud presupposes a doubt whether any such trust exists; and if the property is sold before the doubt is solved, it necessarily follows that the purchase is subject to all the uncertainty of a gambling adventure. All our observation shows that such interests are bid off at a nominal sum, and while the debtor is stripped, the creditor receives nothing. Yet, as the law exists, the creditor may at once proceed to sell the debtor's interest, leaving it to the purchaser to ascertain as he may what that interest is; or he may first, by a proceeding in equity, ascertain the existence or extent of the interest, and sell it when so ascertained. That the latter is the better course is no reason, however, why the former may not be pursued.

The matter has been hitherto considered as though there were no obstacle to the plaintiff's proceeding, but the defendant interposes the statute of limitations. No issue is made by the pleadings, and no evidence is offered in regard to the time of the discovery of the fraud; hence we must treat it as known at once.

In the absence of any special limitations to actions for relief upon the ground of fraud, the fraudulent purchaser, though liable to be declared a trustee for the benefit of the creditors, would hold possession adverse to his grantor, and may take advantage in equity of a limitation analogous to one that would bar an action at law. (Ang. Lim., §§ 470–1, and cases cited.) Judge Scott, in the case of Keeton's Heirs, 20 Mo., on page 541, says that "in cases of resulting, implied and constructive trusts, where a party is to be constituted a trustee by a decree of a court of equity founded on fraud, it is well settled as a rule of equity that the statute of limitations and presumptions from the lapse of time will operate," and quotes with approval the language of Lord Redesdale, that "if the equitable title be not sued on within the time within which a legal title of the same nature ought to be sued upon to prevent the bar created by the statute, the court, acting by analogy to the statute, will not relieve." In express and continuing trusts there can, from the nature of the case, be no limitation, and the possession of the trustee should be held to

be the possession of the beneficiary. The trustee holds under and for, and not adversely to him. But in actions like the present, where it is sought to make the purchaser a trustee against his will, his possession must be treated as adverse from the time it is taken under the purchase sought to be avoided.

According to some of the cases cited by the plaintiff, a contrary doctrine seems to have been held in North Carolina (Picket v. Picket, 3 Dev. 6); and in Texas it is held that a two years' limitation act does not begin to run until the creditor has obtained judgment. (Compton v. Perry, 23 Texas, 423; Reynolds v. Langford, 16 Texas, 286.) But it is of less consequence what view we take of this question than seems to be supposed, inasmuch as the adverse possession, so far as that of itself can benefit Smith, must have continued for over ten years, for this equity pertains to the realty and not to personal property. No such length of possession is claimed, and even if Smith were treated as in possession, holding through Woodward as his tenant, the statute so far will not avail him.

The defendant also claims the benefit of section 10, page 918, Wagner's Statutes, which limits its actions for relief upon the ground of fraud to five years. But this provision cannot avail him, for by the sub-titles of the act, and by the language of section 8 immediately preceding, its operation is limited to personal actions. The one at bar pertains to the realty, and, so far as it is affected by the statute of limitations, requires the adverse possession that bars real actions.

Before defendant answered, he demurred to the petition for various alleged informalities, but no judgment was entered upon the demurrer, and the questions are not properly before us.

We hold, then, that the equity of redemption, fraudulently conveyed by Woodward to Smith, and which was all the interest Woodward had in the premises, passed by the sheriff's sale to the plaintiff; that said deed of Woodward should be canceled, and that the plaintiff should hold the premises subject to the encumbrances that rested upon it at the time of such conveyance, into whosoever hands they may have passed.

The Circuit Court made no distinction between the fraudulent

conveyance of Woodward to Smith and the trust deeds he had honestly given before, and canceled the whole. In this it committed error, and its judgment should be reversed and the cause remanded for judgment in accordance with this opinion. The other judges concur.