[L. A. No. 316.   In Bank.—January 21, 1899.]

FIRST NATIONAL BANK OF LOS ANGELES, Appellant,
v. AMELIA C. MAXWELL et al., Respondents.

FINDINGS—ADMISSION OF PLEADINGS—A finding need not be made of any fact alleged in the complaint and not denied in the answer.

FRAUDULENT CONVEYANCE—TRUST—MORTGAGE OF OTHER PROPERTY—DEFICIENCY JUDGMENT—ESTOPPEL—WAIVER.—After a conveyance in trust had been executed by a debtor, in violation of a promise to a creditor not to convey any property, or to change its situation, in consideration of an agreed delay by the creditor to commence legal proceedings to enforce the debt, the subsequent acceptance of a mortgage by the creditor upon other property, to secure a note made payable one year after date, does not estop the creditor, after foreclosure of the mortgage, and the docketing of a deficiency judgment from assailing the conveyance in trust as having been made with intent to defraud creditors, nor does it constitute a waiver of the right of such creditor to attack it as a fraudulent conveyance.

ID.—RELIANCE UPON CONDUCT OF PERSON ESTOPPED.—It is an essential element of estoppel by conduct, that the party claiming the estoppel should have relied upon the conduct of the other, and was induced by it to do something which he otherwise would not have done.

Id. — Waiver — Intentional Relinquishment of Known Right.— A waiver is the intentional relinquishment of a known right; and in order to constitute or establish a waiver by subsequent consent to or ratification of a fraudulent conveyance by the debtor, there must be a clear, unequivocal and decisive act of the creditor showing a purpose to abandon or waive the legal right to assail such conveyance, or acts amounting to an estoppel on his part.

Id.— Acceptance of Mortgage—Suspension of Remedy.—The suspension of remedy in favor of the creditor, by the taking of mortgage security for the debt, operating to suspend the right of proceeding against the property fraudulently conveyed, or any other property of the creditor, until the mortgaged property should be exhausted and a deficiency judgment docketed, cannot operate more favorably upon property before that time fraudulently conveyed by the debtor, than upon property still remaining in the hands of the debtor. All are alike subject to the process of the law in favor of existing creditors.

Id.— Conveyance Void as to Creditors — Sale, under Execution — Transfer of Legal Title.—So far as existing creditors are concerned the title and ownership of property conveyed with intent to defraud creditors remains in the fraudulent grantor as fully as though no transfer had been attempted; and the transfer being void as against them, a creditor may seize and sell the property under execution, and the sheriff's deed thereof transfers the legal title itself, and not a mere equity.

Id.— Judgment Lien on Property Fraudulently Conveyed.— A judgment duly docketed against a debtor who has made a fraudulent conveyance, prior to its rendition, becomes a lien on the real estate so fraudulently conveyed.

Id.— Redemption under Deficiency Judgment—Sheriff's Deed to Redemptioner.—Upon an execution sale by one judgment creditor of property fraudulently conveyed by the debtor, another creditor who has obtained a subsequent judgment lien docketed for a deficiency, after foreclosure of a mortgage upon other property, may redeem therefrom, and upon a failure to redeem from him, may acquire the legal title by a sheriff's deed executed to him as such redemptioner.

Id.— Fraudulent Intent — Possession of Means.— The possession of other means, though competent as evidence tending in some measure against the conclusion of fraudulent intent, is not conclusive against it; and if the fraudulent intent is found to exist, the conveyance is void, notwithstanding the debtor has other property ample in amount to satisfy his creditors.

Id.— Erroneous Conclusion as to Waiver—Omission to Find as to Fraudulent Intent.—Where a conclusion of law that the plaintiff waived its right to attack a trust deed executed by the defendant debtor is not sustained by the findings or the evidence, the omission to find upon the issue of fraudulent intent is material, and requires a reversal of the judgment.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Walter Van Dyke, Judge.

The facts are stated in the opinion.

Graves, O'Melveny & Shanklin, for Appellant.

A creditor who has purchased at a sheriff's sale, or his successor in interest, may have an action to annul and set aside a fraudulent conveyance, executed by the debtor as a cloud upon title. (*Judson v. Lyford*, 84 Cal. 505; *Hager v. Shindler*, 29 Cal. 48; *Wagner v. Law*, 3 Wash. 500; 28 Am. St. Rep. 56; *Dunham v. Cox*, 10 N. J. Eq. 437; 64 Am. Dec. 460; *Chautauqua Co. Bank v. Risley*, 19 N. Y. 369; 75 Am. Dec. 347; *Jackson v. Holbrook*, 36 Minn. 494; 1 Am. St. Rep. 683.) A fraudulent deed is void and not voidable, and may be treated by the creditor as a nullity. (Cases cited *supra;* 8 Am. & Eng. Ency. of Law, 772, note 4; *Tapscott v. Lyon*, 103 Cal. 297; *Mason v. Vestal*, 88 Cal. 396; 22 Am. St. Rep. 310; *Eastman v. Schettler*, 13 Wis. 324; *Miner v Warner*, 2 Grant Cas. 448; Freeman on Executions, sec. 136.) A judgment docketed against the debtor is a lien upon land previously conveyed by him with intent to defraud his creditors. (*Smith v. Morse*, 2 Cal. 524, 556; *Jackson v. Holbrook, supra; Dunham v. Cox, supra; Chautauqua Co. Bank v. Risley, supra; Eastman v. Scheltler, supra; Slattery v. Jones*, 96 Mo. 216; 9 Am. St. Rep. 344; *Weightman v. Hatch*, 17 Ill. 281; *Newman v. Willetts*, 52 Ill. 98-102; *Scripps v. King*, 103 Ill. 469; *Wadsworth v. Schisselbauer*, 32 Minn. 84; Bump on Fraudulent Conveyances, 3d ed., 474.) The redemption accepted by Etchepare operated as an assignment of the certificate of sale. (*Abadie v. Lobero*, 36 Cal. 396; *Bagley v. Ward*, 37 Cal. 129-30; 99 Am. Dec. 256; *Stoddard v. Forbes*, 13 Iowa, 296.) The bank, as successor to Etchepare and holding the sheriff's deed under his execution sale, has any remedy to which he was entitled. (*Emmons v. Barton*, 109 Cal. 662; 12 Am. & Eng. Ency. of Law, 243.) Intent to defraud any creditor avoids a conveyance as to all creditors or their successors in interest. (Civ. Code, sec. 3439.) There was no waiver by the bank of the right to assail the fraudulent conveyance, and no estoppel to assert it. (*Fitch v. Corbett*, 64

Cal. 150; *Russell v. Amador*, 3 Cal. 400; 28 Am. & Eng. Ency. of Law, 527; *Bennecke v. Insurance Co.*, 105 U. S. 355; *Pence v. Langdon*, 99 U. S. 578; *Biddle Boggs v. Merced Min. Co.*, 14 Cal. 279-368; *Stockman v. Riverside etc. Co.*, 64 Cal. 59; *Smith v. Penny*, 44 Cal. 165.)

Works & Lee, and Calvin Edgerton, for Respondents.

The plaintiff is estopped to assail the conveyance, having voluntarily accepted the mortgage security upon other property. (*Hart v. Huguet*, 33 La. Ann. 362; *Mitchell v. Steelman*, 8 Cal. 363; *Wolf v. Van Metre*, 23 Iowa, 397; *Zuver v. Clark*, 104 Pa. St. 222; May on Fraudulent Conveyances, 181, 183.) Plaintiff was not a judgment creditor entitled to redeem. (*In re Estes*, 6 Saw. 459-71; *Miller v. Sherry*, 2 Wall. 248.)

HAYNES, C.—Suit to remove a cloud and quiet title to real estate. Findings and judgment were for the defendants, and the plaintiff appeals from the judgment and from an order denying a new trial. Walter S. Maxwell, the husband of Amelia, their three children, all minors, and Charles A. Baskerville, as trustee, were the other defendants. The property involved was the separate property of Mrs. Maxwell.

The facts, briefly stated, are as follows: On and prior to August 23, 1893, Mr. and Mrs. Maxwell were indebted to the plaintiff in the sum of nine thousand three hundred dollars, and plaintiff had instructed its attorneys to commence proceedings by attachment against them to collect said indebtedness, and to attach the property here in controversy. Before commencing suit plaintiff sent for Mr. and Mrs. Maxwell and informed them that an immediate settlement must be made, or proceedings would be taken for its collection; that said defendants requested delay, saying they had reasonable prospects of settling in a few days. Plaintiff then agreed, "on condition that Mrs. Maxwell would make no disposition of her property and make no change in the situation of it, that proceedings would be postponed until Saturday"; that Mrs. Maxwell then promised, "on her honor, using those words," that she would make or suffer no change in the situation of her property; whereupon plaintiff instructed its attorneys to delay proceedings until the following Saturday;

that Mrs. Maxwell, the same day, went to her attorneys and executed a deed to the defendant, Baskerville, conveying to him the property here in controversy in trust for her three minor children, by the terms of which the trustee was to pay the rents and profits thereof, not exceeding three hundred dollars per month, to Mrs. Maxwell, for the clothing, support, education, et cetera,. of said children, and any surplus over that sum to be deposited in a savings bank in the name of the children, to be accumulated until the youngest should arrive at majority, when it should be distributed to them.

This deed was recorded the same day, and on the next plaintiff was informed of it, and with knowledge that it had been executed and recorded the plaintiff took from the Maxwells their promissory note payable one year after date, with interest payable quarterly, and if not so paid the principal to become due and payable upon such default, and a mortgage upon the interest of Mrs. Maxwell in the Lanfranco block, in the city of Los Angeles, to secure said note. Default was made in the payment of the first quarter's interest, and plaintiff thereupon foreclosed the mortgage, and, after exhausting the mortgaged property, on April 7, 1894, docketed a deficiency judgment for the sum of five thousand one hundred and sixty-seven dollars and five cents.

At and prior to the execution of said trust deed one Etchepare held the promissory note of Mr. and Mrs. Maxwell, then past due, upon which he brought suit in December, 1893, and obtained judgment for seventeen hundred and twenty-three dollars and thirty cents and costs, and an execution issued thereon was levied upon the property described in said trust deed, and the interest of Mrs. Maxwell therein was sold to Etchepare on February 19, 1894.

Upon the plaintiff's deficiency judgment being docketed (April 7, 1894) an execution was issued thereon, which was returned *nulla bona,* and thereafter the plaintiff performed all the acts necessary to redeem the said premises from Etchepare, and in due time the sheriff executed and delivered to the plaintiff, as such redemptioner, a deed for the said premises, and said deed was duly recorded prior to the commencement of this action.

The foregoing facts are shown by the evidence without conflict, and, excepting the directions of the plaintiff to its attor-

neys, and the interview between Mr. Elliott, the president of the bank, and Mr. and Mrs. Maxwell, are incorporated in the findings.

The court, however, made some additional findings, which are to the effect that prior to the execution of the mortgage to the plaintiff upon the one-fourth interest in the Lanfranco block, the French Bank had taken a mortgage upon all the interests therein for sixty thousand dollars upon which Mrs. Maxwell had paid twenty thousand dollars; that at the time of the execution of the mortgage to the plaintiff she owned other real estate in the city of Los Angeles "aggregating several thousand dollars over encumbrances, and was possessed of a large amount of personal property, unincumbered, aggregating in value between five and six thousand dollars."

The seventeenth finding is as follows: "The plaintiff knew of the execution of the said trust deed and the financial condition of the said defendants, Walter S. Maxwell and Amelia C. Maxwell, his wife, at the time of the execution and delivery of the said note and mortgage by them to the plaintiff on the twenty-fourth day of August, 1893."

From these findings the court drew the following conclusions of law: "1. That plaintiff waived its right to attack said trust deed; that no legal redemption in this case was had, and that plaintiff did not become substituted to the rights of the purchaser at the sheriff's sale on the Etchepare judgment, and is not the owner of the property and not entitled to have the same removed as a cloud thereon, or to quiet its title thereto"; and that defendants are entitled to judgment.

The complaint alleged that said trust deed was made with the intent to delay and defraud creditors, and especially the plaintiff, and that the defendants, Mr. and Mrs. Maxwell, were insolvent, and these allegations were denied.

After the findings were filed, but before judgment was entered thereon, the plaintiff, upon due notice, moved the court to amend and supplement its findings in several particulars, among them to find upon the question of fraudulent intent in making the trust deed, and to find that the Etchepare note was made before the deed of trust was executed. The motion was denied, and plaintiff excepted.

As to the latter request, it need only be said that it was so alleged in the complaint, and not denied in the answer. A finding is unnecessary where a fact is admitted by the pleadings.

The other proposed amendments and additions to the findings will be noticed, so far as material, in another connection.

Two principal questions were presented to the trial court: 1. Was said trust deed made by Mrs. Maxwell with intent to delay or defraud her creditors? 2. If so, did the plaintiff waive its right to attack it and to have it declared void?

It is conceded that if the plaintiff is estopped from attacking said trust deed upon the ground that it was made with intent to delay or defraud creditors, it is immaterial to the plaintiff whether it was so made or not.

Appellant contends, however, that the conclusion of the court "that plaintiff waived its right to attack said trust deed," if regarded as a conclusion of law, is not sustained by the findings; and, if regarded as a finding of an ultimate fact, is not justified by the evidence; and this contention I think must be sustained.

This question of waiver cannot be discussed without assuming that the trust deed was made with the fraudulent intent charged, for unless there was first a fraud there could be no waiver; and the court, in finding that the plaintiff waived the fraud, impliedly found that the deed was fraudulent and would have been void as to the plaintiff but for the waiver.

The facts upon which counsel for respondent base their argument that plaintiff waived the fraud are stated in their brief to be: that the bank had full knowledge of the making of the trust deed by which the property was conveyed for the benefit of the children; that it was recorded; that it knew of the mortgage upon the homestead and of the general embarrassment of the defendants in meeting their obligations; that all the encumbrances on Mrs. Maxwell's property were of record, and "after knowing these facts he (the president of the bank) entered into an agreement whereby he accepted for the bank a mortgage to the bank"; and the principle which counsel say must control is "that a man who does not speak when he ought, shall not be heard when he desires to speak."

If Mrs. Maxwell had informed the bank of her intention to place the property in question beyond the reach of her creditors,

or sought Mr. Elliott's advice in the matter, this maxim might have an application. But "it is an essential element of estoppel by conduct that the party claiming the estoppel should have relied upon the conduct of the other, and was induced by it to do something which he otherwise would not have done." (*McCormick v. Orient Ins. Co.*, 86 Cal. 260.) It is not pretended that the plaintiff induced the trust deed to be made, or advised that it be made, or that subsequent to the making of it anything was done in relation to the trust property by Mrs. Maxwell or the trustee which, but for the conduct of the plaintiff, would not have been done. On the contrary, a delay in the commencement of legal proceedings and an attachment of the property conveyed by the trust deed was made upon the express condition that no conveyance of her property or change in its situation should be made. This promise is not controverted, except by the testimony of Mrs. Maxwell that she did "not remember it." Neither the statement of counsel for respondent, nor the findings of the court, nor the testimony of any witness shows that Mrs. Maxwell did anything in relation to the property in question, in consequence of the conduct of the plaintiff, that she would otherwise not have done, except to convey the property to the trustee in consequence of the announced intention of the plaintiff to commence legal proceedings for the collection of its claim against her. The equitable maxim, invoked by counsel, surely cannot be based on that, nor indeed, do they claim any such basis for the waiver or estoppel existed, nor even that there was any verbal agreement or understanding that the validity of the trust deed would not be attacked.

It was said by Sir Edward Coke, referring to the statute of 13 Elizabeth, that if there is actual fraud at the outset of a transaction nothing afterward can "anyways salve or amend the matter." It is conceded that this is not now the broad and unbending rule. The exceptions to it are stated in Bigelow on Fraud, volume 2, pages 407, 408, to be cases of present or subsequent consent or ratification by the creditor, and an undoing of the fraud, as by a reconveyance before proceedings are commenced. We do not think that the acts of the plaintiff, which defendants call "a waiver," amount to a subsequent consent or ratification by the creditor. "To make out a case of abandon-

ment or waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose, or acts amounting to an estoppel on his part." (*Ross v. Swan,* 7 Lea, 467.)

"A waiver is the intentional relinquishment of a known right." (28 Am. & Eng. Ency. of Law, 526.)

The conclusion of the court below that plaintiff waived the fraud of defendants was based, as the evidence and the findings conclusively show, wholly upon the fact that it took the note and mortgage with knowledge of the financial embarrassment of Mr. and Mrs. Maxwell, and of the making and recording of the trust deed. Those facts do not justify the inference that the plaintiff intended to waive the fraud. Nothing was said upon that subject. No stipulation to that effect was inserted in the note or mortgage. The only inference to be drawn from the mortgage is that of a condition attached by the law to all mortgages, namely, that the mortgaged property shall be first exhausted, and if that proves insufficient a judgment for the deficiency shall be docketed which may be enforced against any other property liable to execution. It is not contended that this statutory right was waived as to any other property than that fraudulently conveyed, though I can see no logical or satisfactory reason why the supposed waiver would not equally apply to such other property. Any other interpretation of the law, or inference of fact, would make fraud a virtue to be carefully protected and nurtured into full fruition. There was no dealing with the trustee in relation to the trust property. From the time the trust deed was delivered Mrs. Maxwell was a stranger to the title of the property thereby conveyed. She had no authority to act concerning it. She could neither exempt it from the payment of her debts nor apply it thereto. The giving of a mortgage as security for an antecedent debt requires no new consideration to support it, nor does it impose upon the mortgagee any condition not expressed upon its face other than those provided by law. The note and mortgage were in writing and expressed the whole agreement of the parties. This transaction falls far short of "clear, unequivocal, and decisive" evidence of a purpose on the part of the plaintiff to waive a legal right given it by the solemn act of the mortgagors and in the absence of such evidence a court

of equity will not infer a waiver. As in all cases where a mortgage is taken to secure a debt then due, the taking of the security operated to suspend the right of proceeding against the property fraudulently conveyed, or any other property of the debtor, until the mortgaged property should be exhausted and a deficiency judgment docketed; but we cannot perceive any principle upon which such suspension of the remedy, without more, should operate more favorably upon property fraudulently conveyed than upon property still remaining in the hands of the debtor, all being alike subject to the process of the law in favor of existing creditors.

Respondents cite several authorities, but none of them sustain their contention that the facts of this case show a waiver on the part of the plaintiff. Our attention is particularly called to the case of *Pell v. Tredwell*, 5 Wend. 661, from which they quote the following passage: "A family settlement—that is, a conveyance by a parent of all his real estate to a daughter for the benefit of herself and her brothers and sisters—made *bona fide*, will not be set aside in favor of a creditor at the time of the conveyance by whose advice and procurement the settlement was made, the creditor having at the time ample security for the money due him by mortgages upon specific portions of the estate, but which, after a lapse of ten years, proved insufficient at a forced sale to satisfy his demand. Nor will the creditor be permitted to raise the residuum of his debts by sale of the lands not covered by his mortgages." No one doubts that a voluntary conveyance, "made by the advice and procurement of a creditor," is valid as to him.

*Wolf v. Van Metre*, 23 Iowa, 397, cited by respondents, lends no support to their contention. There the husband gave a note to the plaintiff for his personal debt, and his wife signed it as surety and gave a mortgage on one parcel of land to secure it. She afterward, in good faith, made a voluntary conveyance of other lands to her children, and, after the last-mentioned conveyance was made, the plaintiff, with knowledge thereof, surrendered his note and mortgage and took a new note, and a mortgage executed by the wife, on the lands conveyed to the children. The court held: "Where the voluntary conveyance is made in good faith, and the subsequent purchaser or encumbrancer has

notice of it, he cannot defeat it." One material distinction between that case and this is that here the voluntary conveyance was not made in good faith, but with an undisputed fraudulent intent; and another is that under the laws of Iowa, as declared by the court in that case, the wife was not personally liable upon the note; that she could only create a liability against her property, and could not, therefore, make a conveyance in fraud of her creditors, who could have no legal or equitable right in any of her property except that specially charged.

In the case of *Zuver v. Clark*, 104 Pa. St. 222, the statement of facts shows that the creditor was present at the execution of the deeds alleged to be fraudulent, and was a subscribing witness to their execution, and that the exchange of properties was made upon his recommendation.

*Bobb v. Woodward*, 50 Mo. 95, cited by respondents, was the case of an assignment to hinder and delay creditors. It was held that the creditors might have treated the sale as a nullity, but, having failed to do so, and having lain by and suffered the assignee to carry on the business in his own name and with his own money and credit, to sell out and replenish the stock, and engage in other transactions based on their acquiescence, the creditors were estopped. But here there was no change in the property by the trustee or the beneficiaries induced or acquiesced in by the creditors. None of the cases cited by respondent are more nearly in point than those above noticed. The burden of proving a waiver of or acquiescence in the fraud is upon the defendants, and such waiver or acquiescence cannot be inferred from the facts appearing in the evidence in this case.

It is further contended by respondents that plaintiff was not a judgment creditor having a lien upon the property in controversy, and was not, for that reason, entitled to redeem from the sheriff's sale to Etchepare.

This contention is based upon two grounds: 1. That plaintiff waived the fraud, and thereby admitted the title of the trustee; and 2. That, admitting the trust deed was made to delay and defraud creditors as alleged, the judgment lien could not attach to the land because the conveyance was operative between the parties, and hence there was no title or interest in Mrs. Maxwell to which the lien could attach.

The first of these grounds has been disposed of and need not be further noticed.

The second ground is wholly untenable. The code expressly declares that such transfer "is *void* against all creditors of the debtor." "A void thing is as no thing." So far as existing creditors are concerned, the title and ownership of the property remains in the fraudulent grantor as fully as though no transfer had been attempted.

In 1 Freeman on Executions, section 136, it is said: "As against the fraudulent transferee the creditor may seize the property, whether real or personal, as that of the fraudulent vendor, and may proceed to sell it under execution. The title transferred by such sale (on execution) is not a mere equity—not the right to control the legal title and to have the fraudulent transfer vacated by some appropriate proceeding; it is the legal title itself, against which the fraudulent transfer is no transfer at all."

This language was quoted and approved by this court in *Judson v. Lyford,* 84 Cal. 507. See, also, *Bull v. Ford,* 66 Cal. 176, where the same point was decided.

The case of *In re Estes,* 6 Saw. 459, cited by respondents, appears to sustain their contention; but as the point is conclusively settled by our own decisions it is not necessary to review that case.

If it be true, as the authorities clearly hold, that so far as it is necessary for the protection of creditors the title and ownership remains in the fraudulent grantor, and that a sale under execution will pass the legal title to the purchaser, it must logically follow that a judgment duly docketed becomes a lien on the real estate so fraudulently conveyed. If there is nothing to which a judgment lien could attach, there can be nothing which would pass by a sale on execution.

I therefore conclude that the plaintiff had a judgment lien, and was entitled to redeem the property from the sale under execution issued upon the Etchepare judgment.

Another question should be briefly noticed. The answer alleges, and the court found, that aside from the property embraced in the trust deed Mrs. Maxwell owned real estate aggregating several thousand dollars over encumbrances, and was possessed of a large amount of personal property, unincumbered, aggregating in value between five and six thousand dollars.

This is not a finding that the trust deed was not made to delay and defraud creditors, though competent as evidence tending in some measure toward that conclusion, though far from being in itself conclusive. In Bigelow on Fraud, volume 2, page 393, it is said: "Indeed, it matters not, where personal intent to defraud is shown, that the fraudulent conveyance, if allowed to stand, would not harm anyone, by reason of the fact that the debtor has other property ample in amount within the reach of his creditors"; and in *Hager v. Shindler*, 29 Cal. 60, it was said: "A rich man may make a fraudulent deed as well as one who is insolvent." (See, also, *Bull v. Bray*, 89 Cal. 300.)

There can be no question, upon the evidence appearing in the record, that there was on the part of the grantor such personal intent to defraud, and the facts stated in said finding do not overcome that evidence; and, besides, it is a finding of probative facts merely, and not of the fact of fraudulent intent or its opposite.

The evidence upon which that finding is based is also used, in argument, to show that there was personal property out of which plaintiff's deficiency judgment could have been satisfied. The return of the sheriff of no property found, and Mrs. Maxwell's statement to the officer that she had no property, is conclusive upon that point, if it were material, a point we need not discuss. Besides, the finding relates to the date of the trust deed, and not to the date of the execution.

The conclusion "that plaintiff waived its right to attack said trust deed," not being justified by the findings or the evidence, a finding upon the issue of the fraudulent intent with which it was charged to have been made is essential.

I advise that the judgment and order appealed from be reversed and the cause remanded.

Searls, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and the cause remanded.

> Henshaw, J., Garoutte, J.,
> Harrison, J., McFarland, J.
> Temple, J.