[Civ. No. 3810. First Appellate District, Division Two.—July 15, 1921.]

BANK OF SOUTH SAN FRANCISCO (a Corporation), Appellant, v. EDNA LAURA PIKE et al., Defendants; HENRY S. BRIDGE et al., Respondents.

[1] ATTACHMENT—REAL PROPERTY IN NAME OF ANOTHER—ENCUMBRANCE BY RECORD OWNER—NOTICE—PRIORITIES OF LIENS.—An attachment of all the interest of the judgment debtor in real property standing of record in the name of another person creates a valid lien on the property which cannot be subsequently destroyed except by a dissolution of the attachment, and the owner of a subsequent encumbrance placed on the property by the holder of the record title cannot set up want of notice of such attachment to establish priority of the lien of such encumbrance.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George E. Crothers, Judge. Reversed.

The facts are stated in the opinion of the court.

John D. Willard and John W. Coleberd for Appellant.

Stanley Jackson for Respondents.

STURTEVANT, J.—Plaintiff commenced an action against the defendants to quiet its title to a tract of land in San Francisco. The trial court gave judgment, among other things, in favor of the defendants Henry S. and Carrie E. Bridge, and from that portion of the judgment the plaintiff has appealed, bringing up the judgment-roll without any bill of exceptions.

The facts material to a consideration of the case are as follows: On April 1, 1910, the American Steel Casting Company, a corporation, and Boaz D. Pike and Georgie S. Pike, executed to plaintiff a one-day note; on April 11, 1911, the plaintiff commenced an action on the note against the makers; each and all of the defendants in that action defaulted and judgment was entered on the twenty-third day of May, 1912. On the same date that the action was commenced on the promissory note an attachment was taken out, served, recorded, and returned, under and by virtue of which plaintiff attached the real estate in San Francisco standing of record in the name of Boaz D. Pike, Georgie S. Pike, or Edna Laura Pike. On the twenty-second day of April, 1914, execution issued on said judgment and such proceedings were had that thereafter the sheriff duly and regularly delivered to the plaintiff on the twenty-ninth day of December, 1915, a sheriff's deed to the property in dispute. On the seventh day of June, 1910, Boaz D. Pike and Georgie S. Pike executed to Edna Laura Pike, their daughter, a deed of gift purporting to transfer said property. On February 10, 1913, Edna Laura Pike executed to the defendant Carrie E. Bridge her promissory note in the sum of fifteen hundred dollars, and to secure the same she executed to Henry S. Bridge and Fred W. Bridge a trust deed covering the property in dispute. Besides the foregoing facts the trial court found that Boaz D. and Georgie S. Pike executed the deed to their daughter, Edna Laura Pike, voluntarily, without any valuable consideration, at a time when they were insolvent, and that they did so with the intent to hinder and delay and to defraud their existing creditors and this plaintiff of its judgment against them. The trial court also found that Fred W. Bridge died after the execution of the deed of trust and that Henry S. Bridge and Carrie E. Bridge had no notice prior to the commence-

ment of this suit of any claim by plaintiff of the invalidity of the title of the said defendant Edna Laura Pike to the said real estate.

The plaintiff claims that the deed from Boaz D. and Georgie S. Pike to their daughter, Edna Laura Pike, was void, and that it was void as to the defendants Henry S. and Carrie E. Bridge because they had notice of plaintiff's claim. The defendants Henry S. and Carrie E. Bridge reply that they had no notice. The trial court found (Tr., fols. 94–114) that at the time plaintiff commenced its action on the promissory note, April 11, 1911, it regularly levied an attachment on the interest of Edna Laura Pike. It also found (Tr., fols. 216–218) that Henry S. and Carrie E. Bridge had no notice of the plaintiff's claim. If it be said that these two findings are conflicting the case should be reversed (*McElligott* v. *Krogh*, 151 Cal. 126, [90 Pac. 823]). If it be said that the finding on the recording of the papers on attachment in the recorder's office was a specific finding and that the other finding regarding no notice was a general finding, then the specific finding should control (*McCormick* v. *National Surety Co.*, 134 Cal. 510, [66 Pac. 741]), and, for the reasons which we shall presently develop, the judgment should have been for the plaintiff and against the defendants.

[1] The claim of the defendants is that they had no notice of the attachment and, as the title to the property stood of record in the name of Edna Laura Pike, that the defendants were entitled to deal with her as the owner. They also claim that as the plaintiff had not filed an action in the nature of a creditor's bill against Edna Laura Pike on February 10, 1913, the defendants were not in any way bound by any contention of this plaintiff regarding the frailty of the title of Edna Laura Pike. In both of these contentions of the defendants we think that they are in error. In section 136 of Freeman on Executions it is said: "As against the fraudulent transferee, the creditor may seize the property, whether real or personal, as that of the fraudulent vendor, and may proceed to sell it under execution. The title transferred by such sale is not a mere equity—not the right to control the legal title, and to have the fraudulent transfer vacated by some appropriate proceeding; it is the legal title itself, against which the fraudu-

lent transfer is no transfer at all. The creditor having a judgment may, if he thinks it advisable, ask the aid of equity, but he cannot be compelled to do so." In those words the author has digested a long line of cases in California, including, among others, *First Nat. Bank of L. A.* v. *Maxwell,* 123 Cal. 360, [69 Am. St. Rep. 64, 55 Pac. 980]; *Brown* v. *Campbell,* 100 Cal. 635, [38 Am. St. Rep. 314, 35 Pac. 433]; *Judson* v. *Lyford,* 84 Cal. 505, [24 Pac. 286]. In proceeding to perfect its rights under the particular remedy which it had selected, the plaintiff caused to be issued and duly levied an attachment on the lands in controversy (Code Civ. Proc., sec. 542, subd. 2). When the attachment was served the effect thereof was, as stated in section 224 of Drake on Attachments: "When an attachment is served, a lien on the property attached is created, which nothing subsequent can destroy but the dissolution of the attachment. It is said to be beyond the power of the state legislature to pass an act annulling it. And as to the defendant, though, as we have just seen, his power of alienation, subject to the attachment, is not impaired, yet no subsequent act of that description on his part can defeat the attachment." It is not, and it could not well be, contended that such an attachment would not be controlling as to the debtors and his subsequent acts (*First Nat. Bank of L. A.* v. *Maxwell,* 123 Cal. 360, [69 Am. St. Rep. 64, 55 Pac. 980]). The question is, has the statute been duly complied with, and, if it has been, then the lien has been created. And it has been held uniformly that when the writ of attachment has been duly levied, on real property, or an interest therein belonging to the judgment debtor, although the title stands of record in the name of another, the levy has the same binding force and effect. In *Porter* v. *Pico,* 55 Cal. 165, at page 174, the court says: "The property is sold under the final process issued on the judgment, but the deed made to the purchaser at the sale, as the last of the series of acts, takes effect from the date of the levy of the attachment, as the first of the series of acts, and perfects the title to the property from the day when it was taken by the officer for the satisfaction of the judgment." As to the grantees and mortgagees of the debtors, claiming under instruments made subsequent to the date of the attachment, the rule in *Porter* v. *Pico* has been uniformly followed.

(*Anderson* v. *Goff,* 72 Cal. 65, [1 Am. St. Rep. 34, 13 Pac. 73]; *Riley* v. *Nance,* 97 Cal. 203, [31 Pac. 1126, 32 Pac. 315]; *Robinson* v. *Thornton,* 102 Cal. 675, [34 Pac. 120]; *Reilly* v. *Wright,* 117 Cal. 77, [48 Pac. 970]; *Woodward* v. *Brown,* 119 Cal. 283, 306, [63 Am. St. Rep. 108, 51 Pac. 2, 542]; *Martinovich* v. *Marsicano,* 150 Cal. 597, [89 Pac. 333].) This rule is but applying section 2897 of the Civil Code, which provides: "Other things being equal, different liens upon the same property have priority according to the time of their creation . . . "; and section 3525, which provides: "Between rights otherwise equal, the earliest is preferred." If one attached person cannot defeat the attachment, how can another? They are all attached under the same statutes. The authorities hold the rule is the same. (*Thompson* v. *Baker,* 141 U. S. 648, [35 L. Ed. 889, 12 Sup. Ct. Rep. 89, see, also, Rose's U. S. Notes]; *King* v. *Wilson,* 54 N. J. Eq. 247, [34 Atl. 394]; *Westervelt* v. *Hagge,* 61 Neb. 647, [54 L. R. A. 333, 85 N. W. 852, 856]; *Coit* v. *Sistare,* 85 Conn. 573, [Ann. Cas. 1913C, 248, 84 Atl. 119, 121]; *Brackett's Admr.* v. *Borcing's Admr.,* 131 Ky. 751, [115 S. W. 766, 110 S. W. 276, 280]; *Merchants & Farmers' Bank* v. *Harris,* 113 Ark. 100, [167 S. W. 706, 709]; *Pease* v. *Frank,* 263 Ill. 500, [105 N. E. 299, 302].) In the Thompson case, *supra,* at page 655, Mr. Justice Harlan, writing the opinion, says: "So, in *Hancock* v. *Henderson,* 45 Tex. 479, 484, where the contest was between the holder of an attachment lien upon land and a person who purchased from the grantees of the defendant in the attachment, who, it was alleged, had conveyed the land to such grantees with the fraudulent intent to hinder his creditors, such purchaser having no actual notice of the issuing of the attachment or of the levy, the court said: 'That a valid levy created a lien on the land attached, and, when properly returned on the writ into the court from which it issued, is notice to third parties, are propositions which it is not deemed necessary to discuss . . . It follows that Mrs. Louisa Hancock, the purchaser after the levy of the attachment, having bought the land under these circumstances, took it subject to the plaintiff's attachment lien.' "

The respondent cites *Morrow* v. *Graves,* 77 Cal. 218, [19 Pac. 489], and *Casey* v. *Leggett,* 125 Cal. 664, [58 Pac. 264]. The cases are not helpful. They were cases involv-

ing unrecorded deeds. Assuming an unrecorded deed was made in good faith, it passed the title upon its delivery. After its delivery the lands were not "lands belonging to the defendant." Such lands, therefore, were not subject to attachment. (Code Civ. Proc., sec. 542, subd. 2.) Furthermore, it will not be contended that an attaching creditor is a purchaser for value and he cannot, therefore, claim protection under the Civil Code, sections 1213–1218; *Hoag* v. *Howard*, 55 Cal. 564. And, again, it will not be contended that an attaching creditor can ever secure any greater estate in property than the debtor possessed at the date of the levy.

The briefs devoted some space to the issue as to whether the respondents had notice, actual or constructive. The respondents cite some language contained in *Casey* v. *Leggett, supra,* and *Morrow* v. *Graves, supra,* and in reply the appellant cites some language contained in *Ritter* v. *Scannell,* 11 Cal. 238, 249, [70 Am. Dec. 775]. The respondents might also have cited *Aigeltinger* v. *Einstein,* 143 Cal. 609, 616, [101 Am. St. Rep. 131, 77 Pac. 669]. The matter of notice or no notice, we believe, is a false issue under the facts of this case. The real issue is lien or no lien. If the appellant gave all the notice that the statute required in taking out its attachment, and otherwise fully complied with the statute, it acquired a valid lien. If it acquired a valid lien, we have shown that such lien could not be diminished after its creation except by a dissolution of the attachment.

It follows that the appellant should have been given a judgment on the findings as made; that this judgment should be reversed, and the trial court should be directed to enter judgment for the appellant on the findings, in accordance with what has been said above, and it is so ordered.

Langdon, P. J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 12, 1921.

All the Justices concurred.