[Civ. No. 6542. Fourth Dist. June 9, 1961.]

JOHN RONALD PAUL, Respondent, v. PALM SPRINGS HOMES INCORPORATED et al., Appellants.

*Assigned by Chairman of Judicial Council.

Maurice J. Hindin and Hindin, Sterling, McKittrick & Powsner for Appellants.

Claude L. Rowe for Respondent.

GRIFFIN, P. J.—In an amended complaint, plaintiff and respondent John Ronald Paul sought judgment against defendants and appellants Palm Springs Homes Incorporated and Pauline K. Boltz and defendants Walker Boltz, individually and doing business as Palm Springs Homes, Inc., and also doing business as Annandale Corporation, which was alleged to be the *alter ego* of defendants F. Walker Boltz and Pauline K. Boltz. In the first count, plaintiff alleges that defendants executed and delivered to plaintiff a certain promissory note attached to the complaint in the sum of $37,500, and that there is a balance due thereon of $25,000 principal

plus $1,250 interest. The note is signed "Annandale Corporation, by F. Walker Boltz, President, attest: J. E. Forbes."

The second cause of action is based on an unpaid note for $10,000, dated March 10, 1958, payable to plaintiff and signed "Palm Springs Homes Incorporated, F. Walker Boltz, President, J. E. Forbes, Secretary." It is alleged that said note was executed by Palm Springs Homes Incorporated for itself and as the *alter ego* of defendants J. Walker Boltz and Pauline K. Boltz.

The third cause of action alleges that on January 10, 1958, Palm Springs Homes Incorporated, for itself and as *alter ego* for defendants F. Walker Boltz and Pauline K. Boltz, at Fresno, executed and delivered to plaintiff a promissory note in consideration of $10,000 paid to F. Walker Boltz, which inured to the benefit of defendants Palm Springs Homes Incorporated and Pauline K. Boltz and F. Walker Boltz, and was in fact a promissory note of said Palm Springs Homes Incorporated and that $5,000 plus interest of $2,566.67 was due thereon. The total judgment sought against each and all of defendants was $47,608.34.

Preceding these allegations which were incorporated in each cause of action are general and specific allegations that defendants Pauline Boltz and F. Walker Boltz were doing a real estate and subdivision business under several different names, including California Dream Homes Company, Palm Springs Homes, Inc., Palm Springs Homes Incorporated, Annandale Corporation, Fortune Mortgage Company, and Palm Springs Country Club Estates, and that each was the *alter ego* of defendant Boltz and his wife, and that the acts, signatures and liabilities of these firms were the acts and signatures and the liability of these individual defendants. It was alleged that F. Walker Boltz was judgment proof and a list of unsatisfied judgments against him was set forth. It is then alleged that Boltz and his wife, for the purpose of defrauding their existing and future creditors, and to conceal their assets from their creditors, caused these corporations to be formed; that none was adequately financed and no permit to issue stock was issued to Palm Springs Homes Incorporated until January 26, 1959, when 200 shares of $100 par value stock were issued to Pauline K. Boltz and J. E. Forbes in cancellation of an alleged indebtedness to Pauline K. Boltz and J. E. Forbes and said stock was taken in the name of J. E. Forbes, sister of F. Walker Boltz, solely as agent for and on behalf of F. Walker Boltz and that he and his wife were the real owners of said stock and

completely controlled said corporation and used it as their *alter ego* and business conduit in the conduct of their business.

It is also alleged that defendant Annandale Corporation was likewise inadequately financed; that no permit to issue stock was issued until January 10, 1957; that 50 shares of stock having a par value of $10 per share were then issued; that, as their *alter ego,* Boltz and his wife got plaintiff to lend them, through said corporation, $25,000, as evidenced by said note; that they allowed said corporation's powers to lapse and that its corporate powers were suspended on January 21, 1959, and said corporation was used as a front by Boltz and his wife; that the corporation was controlled by them and was used as a business conduit by them, for preventing plaintiff and other creditors from collecting their indebtedness and for hiding the assets of the defendants Boltz. It is then alleged that Boltz and his wife, since the execution of these notes, caused Palm Springs Homes Incorporated to transfer most of the real property standing in its name to defendant Pauline K. Boltz in order to dissipate the corporation's assets and to cause its corporate powers to lapse; that Mr. Boltz has an interest therein and Mrs. Boltz has taken title thereto to prevent plaintiff and other creditors of Mr. Boltz from levying execution upon or attaching said property; that Boltz and his wife are the sole owners of Palm Springs Homes Incorporated and that by reason of the foregoing fraud, injury will result to plaintiff if the corporate fiction and corporate veil of the defendant corporations are not pierced. Affidavits in opposition to the motions to quash attachment set forth in more detail these general allegations.

Appellant Mrs. Boltz contends on appeal: (1) that no attachment could lie as to her property under the allegations of the amended complaint and affidavits used in support of the attachment because the first cause of action is based on an alleged indebtedness of Annandale Corporation and insufficient facts are alleged to show that it was the *alter ego* of Mrs. Boltz or Palm Springs Homes Incorporated (citing such authority as *O'Connell* v. *Walker,* 12 Cal.App. 694 [108 P. 668]; *Estate of Greenwald,* 19 Cal.App.2d 291 [65 P.2d 70]; *Shafford* v. *Otto Sales Co., Inc.,* 119 Cal.App.2d 849 [260 P.2d 269]); (2) that an action to disregard a corporate entity and hold an individual liable as its *alter ego* is equitable in nature and will not support the provisional remedy of attachment, particularly where no ownership of stock in the corporation is alleged (citing *Hallidie* v. *Enginger,* 175 Cal. 505 [166 P. 1];

*Stowe* v. *Matson*, 94 Cal.App.2d 678 [211 P.2d 591]; *Talcott Land Co.* v. *Hershiser*, 184 Cal. 748 [195 P. 653]; *Shea* v. *Leonis*, 14 Cal.2d 666 [96 P.2d 332]); (3) that the value of the properties held under attachment greatly exceeds the amount of the indebtedness and accordingly it constituted an excessive attachment and the excess should be released (citing Code Civ. Proc., §§ 538, 540; *Barceloux* v. *Dow*, 174 Cal.App. 2d 170 [344 P.2d 41]); and (4) that the levy of an attachment creates a specific lien upon the real property so attached and under Code of Civil Procedure, section 537, subdivision 1, plaintiff may not secure an attachment for that portion of the claim which is ''secured by any mortgage . . . or lien,'' and that plaintiff may not jointly attach property standing in the name of separate defendants (citing such authority as *Bank of South San Francisco* v. *Pike*, 53 Cal.App. 524 [200 P. 752]).

## I. ALTER EGO ALLEGATION

In answer to appellant's argument that the amended complaint and affidavits presented did not sufficiently show that Annandale Corporation and Palm Springs Homes Incorporated were being operated as the *alter ego* of Pauline K. Boltz, we are convinced that there was a sufficient showing made to the trial court, although the evidence may be conflicting, that the alleged corporations were acting as the *alter ego* of Pauline K. Boltz and her husband. The truth of these allegations can be determined after evidence upon the issue of liability is formally presented at the trial of the action. (6 Cal.Jur.2d 11, sec. 108; *Asamen* v. *Thompson*, 55 Cal.App.2d 657 [131 P.2d 839].) Appellant did not order the original complaint brought up to this court as a part of the record on appeal. We will assume it contains similar provisions to those set forth in the amended complaint. [██] It is the general rule that on a motion to discharge an attachment the motion cannot serve the purpose of a demurrer to test the sufficiency of the complaint. (*Minor* v. *Minor*, 175 Cal.App.2d 277 [345 P.2d 954]; *Wolford* v. *Neustadter*, 21 Cal.App.2d 417, 418 [69 P.2d 909].) The amended complaint does state a cause of action and the trial court so held.

█ The conditions under which a corporate entity may be disregarded vary according to the circumstances in each case. Some of the factors so indicating are set forth in the cited cases. (*Automotriz etc. De California* v. *Resnick*, 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042] (inadequate capitalization and failure to issue stock); *Talbot* v. *Fresno-Pacific Corp.*, 181 Cal.App.2d 425 [5 Cal.Rptr. 361] (inade-

quate capitalization); *Hiehle* v. *Torrance Millworks, Inc.,* 126 Cal.App.2d 624 [272 P.2d 780] (sham corporation); *Geisenhoff* v. *Mabrey,* 58 Cal.App.2d 481, 490 [137 P.2d 36] (manipulation to avoid personal liability and failure to obtain permit to issue stock); *Riddle* v. *Leuschner,* 51 Cal.2d 574 [335 P.2d 107] (unity of interest and ownership); *Temple* v. *Bodega Bay Fisheries, Inc.,* 180 Cal.App.2d 279 [4 Cal. Rptr. 300] (influenced and governed by *alter ego*); *Erkenbrecher* v. *Grant,* 187 Cal. 7 [200 P. 641] (business conduit); *Riddle* v. *Leuschner, supra,* p. 577 (use of same attorney and two corporations occupying same office); *Automotriz etc. De California* v. *Resnick, supra* (acts treated as those of corporation alone where inequitable result will follow); *Gordon* v. *Aztec Brewing Co.,* 33 Cal.2d 514 [203 P.2d 522] (actual fraud not necessary; rule designed to prevent fraud and injustice).

▋ Appellants conceded that Pauline K. Boltz was a stockholder and officer of defendant Palm Springs Homes Incorporated. The amended complaint alleges that she and her husband were the sole owners of its stock and also alleges Mrs. Boltz and her husband were, at all times, the sole owners of Annandale Corporation. A sufficient showing was made.

## II. EQUITABLE ACTION CLAIM

▋ No claim in reference to this being an equitable action and not subject to attachment remedies was made in defendant's motion to dissolve the attachment. However, the point has been disposed of in *Weintraub* v. *Superior Court,* 91 Cal. App. 763 [267 P. 733], where it was held that goods sold and delivered, and promissory notes, are the subject of actions at law, and writs of attachment are available and proper as a means of securing to litigants the property of debtors which may be responsive to any judgment recovered in such cases, *and such right of attachment is not defeated by the fact that the plaintiff, in such an action, seeks to peer through fraud and pierce the corporate veil* as a means of discovering and retrieving camouflaged property subject to attachment. See also *Stanford Hotel Co.* v. *M. Schwind Co.,* 180 Cal. 348 [181 P. 780]; *Bennett* v. *Superior Court,* 218 Cal. 153, 161 [21 P.2d 946]; 5 Cal.Jur.2d 617.

## III. VALUE OF PROPERTY ATTACHED

Mrs. Boltz alleged that the combined market value of her property, excluding liens and encumbrances attached in this case, was $343,335.40. However, liens and trust deeds thereon

were shown to amount to $582,056.75. There were certain other claimed valuations shown. Since appellants have posted a bond in the amount sought by the amended complaint, and the attachment has been released, the argument becomes of little interest to this court. Counsel concedes in his reply brief that the claim of excess value of the property attached has become moot. He properly maintains however that a bond for the release of property from attachment does not affect and is not a waiver of proceedings to dissolve and discharge the writ of attachment. (6 Cal.Jur.2d, § 108, pp. 10-11.)

### IV. ATTACHMENT LIEN

If we understand appellants' theory in this respect, they make the novel claim that if plaintiff has, by attaching property of a corporate defendant, perfected his lien of attachment against the property of the other defendant, to the extent of the value of the property so attached the debt is a secured one within the meaning of Code of Civil Procedure, section 537, subdivision 1, *supra*. They cite *Bank of South San Francisco* v. *Pike, supra,* 53 Cal.App. 524, and contend that it is impossible to jointly attach the property of two defendants simultaneously because the simultaneous attachment of one defendant makes the claim sued on a "secured" obligation of the other defendant. We are convinced that the attachment of the property, at least to the value of the amount claimed, was authorized. (*Bennett* v. *Superior Court, supra,* 218 Cal. 153; Code of Civil Procedure, sections 540, 541 and 542.) Section 540, *supra,* specifically gives a plaintiff the right to jointly attach the property of two defendants at the same time. In *Riddle* v. *Leuschner, supra,* 51 Cal.2d 574, 581, it was held that: ". . . two or more shareholders of a corporation may be liable as principals or partners under the *alter ego* principle."

Counsel for appellants concedes that the amended complaint under causes of action two and three, as against defendant Palm Springs Homes Incorporated, does state a cause of action. Accordingly, the court was justified in refusing to quash the attachment as to the property of that defendant. We conclude that the attachment of the property in the first instance as to all defendants was authorized.

Order denying motion to quash attachment affirmed.

Shepard, J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 2, 1961.