[Civ. No. 16809. Fourth Dist., Div. One. Oct. 25, 1979.]

BURTON R. RICHARDSON et al., Plaintiffs and Respondents, v. LA RANCHERITA OF LA JOLLA, INC., et al., Defendants and Appellants.

COUNSEL

Fred U. Hammett, Jr., for Defendants and Appellants.

Turney & Turney and Margaret V. Turney for Plaintiffs and Respondents.

OPINION

**WIENER, J.**—Defendants La Rancherita of La Jolla, Inc. (La Rancherita) and Louis Martinez (Martinez) appeal from the judgment awarding damages to plaintiffs based on the tort of intentional interference with a contractual relationship. The factual setting of this

case—the commercial dealings between a landlord and tenant—requires the drawing of the line between sophisticated negotiations necessary to strike a better deal and economic constraints on those negotiations imposed by the tort of inducing breach of contract. We affirm the judgment.

### Factual and Procedural Background

The facts presented at trial are stated in the manner most favorable to the judgment. The factual issues raised in plaintiffs' motion for partial summary judgment are discussed separately.

In 1971, plaintiff Breg, a California corporation (Breg), negotiated for the purchase of all fixtures, equipment and liquor license of a restaurant in La Jolla. Through Basilio Martinez acting on behalf of the lessor, La Rancherita, the former tenants' interest in the original lease dated April 1, 1954, was assigned to Breg on terms contained in an addendum dated April 6, 1971. Breg lost money every year. In mid-December 1973, with shareholder approval, Breg signed escrow instructions for the sale of the assets of its restaurant to Norman Bomze (Bomze). The contract was contingent upon Breg obtaining the consent of the lessor to the assignment of the lease. The transaction between Breg and Bomze had been carefully structured as a sale of assets for, among other reasons, Breg's shareholders wished to retain the carry-forward tax loss of their subchapter "S" corporation. La Rancherita refused to consent to assignment of a lease to Bomze, relying on the paragraph of the lease which provided: "That the Lessees shall pay the Lessors said rent in the manner hereinbefore specified, and shall not let or underlet the whole or any part of said premises, nor sell or assign this lease, either voluntarily or by operation of law, nor allow said property to be occupied by anyone contrary to the terms hereof, without the written consent of the Lessors."

La Rancherita indicated through counsel and Martinez they were not attempting to "kill the deal," but only wanted to renegotiate the lease on terms which would include increased rent, shared use of an adjoining parking lot, and a cost of living escalation provision. Bomze rejected the proposed terms. Bomze and Breg decided to revise their agreement to by-pass the need for La Rancherita's consent to the assignment. The shareholders of Breg agreed to sell their corporate stock to Bomze; Breg would continue as tenant under the lease and addendum.

La Rancherita, upon being informed of the new agreement, continued its position that its consent was still necessary. In a letter to Breg's lawyer, counsel for La Rancherita stated the sale of stock, after a refusal to consent to a sale of assets, was merely a change of form to circumvent the consent provision of the lease. Counsel for both parties had reviewed and analyzed *Ser-Bye Corp.* v. *C. P. & G. Markets* (1947) 78 Cal.App.2d 915 [179 P.2d 342], which involved a similar legal question and had reached different conclusions. The sale of the stock originally set to close on January 31, 1974, was postponed solely as a result of La Rancherita's actions in threatening a forfeiture of the lease. The sale finally closed on March 3, 1974.

The complaint filed by Breg and its shareholders on February 21, 1974, sought declaratory relief to determine whether a transfer of the Breg stock constituted an assignment of Breg's lease, thereby necessitating La Rancherita's consent plus damages for intentional interference with the contract between Breg and Bomze for the sale of stock. Before trial, plaintiffs' motion for partial summary judgment was granted on their first cause of action—the court finding the lessor's consent was not required. After a court trial, damages of $7,233.06 were awarded for the losses plaintiffs sustained during the period from January 31 to March 3, 1974.

*The Granting of Plaintiffs' Motion for Partial Summary Judgment Was Proper*

Code of Civil Procedure section 437c permits the granting of a partial summary judgment where affidavits, declarations or other admissible evidence and inferences reasonably deducible from such evidence establish no triable issue of material fact on some—but not all—of the issues involved in the action. The rules on granting the motion are well known. (See, e.g., *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953].) ■ "Summary judgment is proper only if the affidavits [declarations] in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit [declaration] show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) "The procedure for . . . summary judgment provides a method by which, if the pleadings are not defective, the court may determine whether the triable issues apparently raised by them are real or

merely the product of adept pleading." (*Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262 [223 P.2d 244].)

■ In the present case, the declaration of Louis Martinez in opposition to the motion, and Burton R. Richardson, in support of the motion, contribute more fuel than facts to the conflict. Basilio Martinez, who participated in the transaction at its inception, did not file a declaration. Richardson declared in part that: "The lessors are simply using this sale as a lever, a financial blackmail if you will, to vitiate the terms of the lease and to attempt to get more money out of the Corporation." Louis Martinez responded: "Our position that sale of all corporate stock of Breg to strangers after our refusal to consent to an assignment to these same people, is violative of the 'occupancy' clause has been consistent in all of my personal discussions with Mr. Richardson and others and has been stressed by our previous counsel to the plaintiffs."

The strong legal conclusions expressed by the respective parties did not raise triable issues of material fact. The court was presented with a written lease without benefit of extrinsic evidence. Although theoretically many factual issues pertaining to the meaning of the subject lease provision could have been raised, the parties did not do so. No suggestion was made that Breg was the alter ego of any one or more of the principals or for other equitable reasons the corporation should be disregarded. The interpretation of the lease under these circumstances was left to the court as a matter of law.

The lease provision in dispute prohibits occupancy by anyone contrary to its terms without the written consent of the lessor. Other than the issue of consent to the assignment, neither party has argued that occupancy by Breg with new shareholders violated the lease in any other respect. The lease itself did not provide that an individual was responsible for rent or liable for the performance of any other provision. The parties, at the time of their negotiations, were apparently satisfied with a corporation as lessee, making no provision to the contrary. Thus the court was asked to bar the transfer of shares of common stock in a valid corporation, permissible under corporate law, solely because of a lease provision prohibiting assignment of the lease, but containing no restraints on transfer of stock ownership. The court, under these circumstances, declined to do so, recognizing the separateness of the corporate form and properly granted plaintiffs' motion for partial summary judgment. (See *Ser-Bye Corp.* v. *C. P. & G. Markets, supra,* 78 Cal.App.2d at pp. 920-921.)

### ■ *Defendants' Conduct Was Not Justified; It Constituted the Intentional Tort of Inducing Breach of Contract*

■ An action in tort "will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification." (*Herron v. State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 205 [14 Cal.Rptr. 294, 363 P.2d 310]; see also *Imperial Ice Co. v. Rossier* (1941) 18 Cal.2d 33, 35 [112 P.2d 631].) The tort is "a [specie] of the broader tort of interference with prospective economic advantage," involving similarity in elementary makeup and conduct while differing only in the existence of a legally binding contract. (*Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 823 [122 Cal.Rptr. 745, 537 P.2d 865].) ■ To recover for inducing breach of contract, a plaintiff must establish (1) the existence of a valid contract; (2) the defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the third party; (4) the breach was proximately caused by defendant's unjustified and wrongful conduct; and (5) that the foregoing resulted in damage to plaintiff. (*Abrams & Fox, Inc. v. Briney* (1974) 39 Cal.App.3d 604,. 607-608 [114 Cal.Rptr. 328]; see also Rest.2d Torts, §§ 766, 766B.) ■ Justification for the interference is an affirmative defense and not an element of plaintiff's cause of action. (*Lowell v. Mother's Cake & Cookie Co.* (1978) 79 Cal.App.3d 13, 19 [144 Cal.Rptr. 664]; *A. F. Arnold & Co. v. Pacific Professional Ins., Inc.* (1972) 27 Cal.App.3d 710, 714-715 [104 Cal.Rptr. 96].)

■ Defendants' arguments rest on the premise that their actions were justified. They contend their conduct was not done solely to damage plaintiffs (see *Bridges v. Cal-Pacific Leasing Co.* (1971) 16 Cal.App.3d 118, 132 [93 Cal.Rptr. 796]), for they were motivated by the good faith belief based on their lawyers' advice that their consent to the assignment of the lease was required. Withholding their consent pending negotiations with the prospective tenant to improve their financial interest was thus proper.

■ The test of whether there is justification for conduct which induces a breach of contract turns on a balancing of the social and private importance of the objective advanced by the interference against the importance of the interest interfered with, considering all the circumstances including the nature of the actor's conduct and the relationship between the parties. (*Herron v. State Farm Mutual Ins.*.

*Co., supra,* 56 Cal.2d at p. 206; *Greenberg* v. *Hollywood Turf Club* (1970) 7 Cal.App.3d 968, 977 [86 Cal.Rptr. 885]; see also Rest.2d Torts, § 767, pp. 26-39.)

In harmony with the general guidelines of the test for justification is the narrow protection afforded to a party where (1) he has a legally protected interest, (2) in good faith threatens to protect it, and (3) the threat is to protect it by appropriate means. (Rest.2d Torts, § 773, pp. 52-53.) Prosser adds: "Where the defendant acts to further his own advantage, other distinctions have been made. If he has a present, existing economic interest to protect, such as the ownership or condition of property, or a prior contract of his own, or a financial interest in the affairs of the person persuaded, he is privileged to prevent performance of the contract of another which threatens it; and for obvious reasons of policy he is likewise privileged to assert an honest claim, or bring or threaten a suit in good faith. [Fns. omitted.]" (Prosser on Torts (4th ed. 1971) § 129, pp. 944-945; see also 45 Am.Jur.2d, Interference, § 23, pp. 298-300.)

█ The financial interest which defendants sought to protect included their right to continue to receive rent and to demand compliance with the essential terms of their lease. The determinative question thus becomes whether their claim was asserted in good faith. Or, phrased differently in the context of this case, was there any reasonable basis, either factually or legally, for their counsel to believe their distinguishing of the *Ser-Bye* case had merit.

*Ser-Bye Corp.* v. *C. P. & G. Markets, supra,* 78 Cal.App.2d 915, involved a lease provision prohibiting assignment similar to the one in the case before us. In affirming a judgment on the pleadings in an unlawful detainer action in favor of the corporate lessee, the court held the sale of stock of the corporation did not constitute an assignment to void the lease.

The language in paragraph first of the La Rancherita lease consisting of the phrase, "...nor allow said property to be occupied by anyone contrary to the terms hereof,..." does not help defendants' argument. As we have stated previously, the quoted words do not reflect an intent that any change in stock ownership requires the lessor's consent. Rather, the language reasonably interpreted simply provides the premises shall be occupied in accordance with all the terms of the lease.

Defendants have also placed reliance in the criticism of *Ser-Bye* in 3 Witkin, Summary of California Law (8th ed. 1973) Real Property, section 493, pages 2171-2172, as further support for the reasonableness—good faith—of their legal position. Witkin's comment involves his concern with the apparent inadequate consideration given by the *Ser-Bye* court of the rule which requires "disregard[ing] the corporate entity when it is used to circumvent an obligation." At no time, either at summary judgment or at trial, did defendants suggest there were any factual questions relating to the alter ego of Breg or that any of Breg's shareholders had guaranteed Breg's rental obligation. There was no testimony by defendants' counsel or their predecessor that they reasonably had expected Basilio Martinez or some other witness to testify on any factual matters which might have touched on defendants' "good faith."

Factual issues including elements which bear on "good faith" were properly before the trial court. (*Bridges v. Cal-Pacific Leasing Co., supra,* 16 Cal.App.3d at p. 132.) There was ample evidence for the court to find that defendants' concern with the assignment of the lease was only incidental to their predominant motive of terminating the existing lease to obtain a new lease upon more favorable terms to themselves. Defendants made no effort to inquire into the financial condition of the successor stockholders or their intended method of operation. They restricted their negotiations to increasing their financial return and not to preserve their interest as lessor. The record is devoid of any evidence that defendants believed their leasehold interest was threatened by the new owners. The court was justified in finding that "[t]he transaction as ultimately consummated was clearly within the parameters of the *Ser-Bye* case. . . ."

■ Something other than sincerity and an honest conviction by a party in his position is required before justification for his conduct on the grounds of "good faith" can be established. There must be an objective basis for the belief which requires more than reliance on counsel.[1] It is the opinion of counsel that must be examined, recognizing that creative and conscientious lawyers should be given every opportunity to challenge outmoded precedent to permit constructive development of the law. (See, e.g., *Umansky v. Urquhart* (1978) 84 Cal.App.3d 368 [148 Cal.Rptr. 547].) However, to merely equate reliance on an attorney's advice with "good faith" is to shield those parties from liability

---

[1]Counsel for defendants did not cast their professional advice in concrete. Martinez quite candidly testified that he understood he was taking a gamble—that everybody had the feeling that the lawsuit could go either way.

who seek and obtain counsel. To create such a blanket rule of immunity is unwarranted.

Judgment affirmed.

Cologne, Acting P. J., concurred.

**STANIFORTH, J.**—I respectfully dissent.

The trial court, in granting the challenged partial summary judgment, violated these elemental procedural rules governing the granting or denial of a summary judgment: (1) The trial court failed to discern a multitude of factual issues that precluded granting of the summary judgment; (2) The trial court overlooked binding precedent, a long-established rule of law pronounced by *this* court and instead relied upon a factually nonapplicable, legally questionable, criticized noncontrolling decision; and (3) In finding a cause of action, it created a radical innovation in substantive California tort law, discarded sound conceptual premises without authority or persuasive reason to justify the departure.

I

The precise question presented by this appeal is whether there has been an erroneous granting of a partial summary judgment. Whether *substantial evidence* supports the award of damages or the earlier granting of the partial summary judgment has no legal relevance where the error complained of is an erroneous granting of the motion for partial summary judgment. These were bifurcated proceedings. An erroneous grant of summary judgment does not become subject to the substantial evidence rule albeit followed by a contested trial on the issue of damages. The error committed in the granting of the motion for summary judgment infected the whole proceeding. Thus, the evidence offered on the summary judgment motion is *not* to be viewed in a light most favorable to the judgment. Rather, it is elementary law that the motion for summary judgment should be denied if the papers submitted show there is a triable issue of fact (Code Civ. Proc., § 437c; *Daugherty Co.* v. *Kimberly-Clark Corp.*, 14 Cal.App.3d 151, 156 [92 Cal.Rptr. 120]), and if an issue of fact is present the trial court abuses its discretion in granting such a motion (*Robinson* v. *City and County of San Francisco*, 41 Cal.App.3d 334, 337 [116 Cal.Rptr. 125]). The

function of the trial court is "issue finding," not "issue determination" (*Walsh* v. *Walsh*, 18 Cal.2d 439, 441 [116 P.2d 62]), and, in reading the papers filed, those of the moving party are to be strictly construed, while those of the opposing party are to be liberally construed. (*Slobojan* v. *Western Travelers Life Ins. Co.*, 70 Cal.2d 432, 437 [74 Cal.Rptr. 895, 450 P.2d 271].)

Next, and of critical importance here, is the rule applicable to summary proceedings declaring that where the matter in issue is the meaning of the language of a written contract, where the intent of the parties is uncertain or ambiguous or doubtful "'*and parol evidence is introduced in aid of its interpretation* [italics ours], *the question...is one of fact....*'" (*Walsh* v. *Walsh, supra*, 18 Cal.2d 439, 444.) Such a dispute *cannot* be resolved by the summary judgment processes. The summary judgment was not intended to provide a substitute for a trial on the merits of such fact issue. (*Ibid.*)

A fair and candid examination of the documents and declarations submitted in support as well as in opposition to the motion for partial summary judgment here, points to one conclusion: a multitude of factual contentions abound, leap forth and require a taking of evidence, a weighing of evidence and a resolution of dispute by trial. For example, plaintiff Richardson's declaration recites facts concerning the actual construction given by the parties to the lease by acts and words of the parties. Contrary to Richardson's position, the declaration of defendant Martinez asserts that his understanding of the disputed term "occupancy" was consistent with "all of my personal discussions with Mr. Richardson and others...." Acts, declarations of the parties in construing the lease provision are clearly factual matters requiring the taking of evidence. Mr. Bomze, on behalf of the lessee, asserts as a matter of fact there has been no change in the occupancy of the premises. The lessor disputes this assertion both as a legal and as a factual matter. Defendants have set forth at some length their expressed intent in the use of the language in question; they intended not only to prohibit an assignment of the lease, but also any change in the physical occupancy. Richardson's position is to the contrary. In light of these clear, plain and unmistakable factual disputes as to the intent of the parties, and as to meaning of these words, and in view of the contradictory evidence tendered on these issues, the granting of the motion for partial summary judgment was inappropriate, in fact an abuse of discretion.

## II

The trial court, in granting the motion for partial summary judgment, ignored this factual dispute as to the meaning of the lease language and concluded that the decision in *Ser-Bye Corp.* v. *C. P. & G. Markets*, 78 Cal.App.2d 915 [179 P.2d 342], was the controlling law. *Ser-Bye* held that a sale of stock of a corporation did not constitute an assignment of the lease. The *Ser-Bye* decision is neither good law nor applicable factually to the situation at bar. *Ser-Bye* involved a judgment on the pleadings in an unlawful detainer action in favor of the corporate lessee. The *Ser-Bye* pleadings charged that the lease contained a covenant to the effect that the lessee would not "assign the leasehold estate . . . without the written consent of the plaintiff first obtained." (*Id.* at p. 918.) Here, factually to the contrary, the covenant in dispute provides not only against assignment of the lease without written consent, but prohibits occupancy by anyone contrary to the terms thereof without the written consent of the lessor. Thus, the critical language here was not in any way involved in *Ser-Bye*. Further, from the face of the lease provisions, as well as from the hot contentions made by the parties, different meanings are in fact to be found and can be reasonably argued from these words. Thus, *Ser-Bye* is factually inapplicable.

Moreover, *Ser-Bye* is not sound law. The learned scholar Witkin criticized the *Ser-Bye* decision in this fashion: "This case, while stressing the equitable rule against forfeitures, appears to give inadequate consideration to the equally important rule that the court will disregard the corporate entity when it is used to circumvent an obligation. [Citations.]" (3 Witkin, Summary of Cal. Law (8th ed.) § 493, p. 2172.) Witkin makes reference to a line of cases holding that even where there is no fraud on creditiors to be shown, "*the corporate entity may be disregarded if its recognition would permit individuals to evade ordinary contractual obligations.*" (6 Witkin, Summary of Cal. Law (8th ed.) § 8, pp. 4320-4321; italics added; *Kohn* v. *Kohn,* 95 Cal.App.2d 708, 718 [214 P.2d 71]; *Wilson* v. *Stearns,* 123 Cal.App.2d 472, 484 [267 P.2d 59]; *Claremont Press Pub. Co.* v. *Barksdale,* 187 Cal.App.2d 813, 817 [10 Cal.Rptr. 214]; *Talbot* v. *Fresno-Pac. Corp.,* 181 Cal.App.2d 425, 431 [5 Cal.Rptr. 361]; *Paul* v. *Palm Springs Homes,* 192 Cal.App.2d 858, 862 [13 Cal.Rptr. 860].)

In the *Kohn* case, *supra,* the "defendant husband, by a property settlement, agreed to pay plaintiff wife 30% percent of his net income

from certain property. Defendant and two others formed a corporation which defendant dominated, one purpose being to minimize payments under the agreement. [The appeal court held] the trial judge erred in failing to disregard the corporate entity in this action for an accounting. 'The essence of the formation of this corporation was to transfer the property of a joint venture to a corporation owned by the joint adventurers (and the other joint adventurer's wife) and thereby attempt to avoid this solemn obligation, and though the corporate form may be continued, if desired, for other purposes, it will not be recognized by the court for the purpose here in question. The law of this state is that *the separate corporate entity will not be honored where to do so would be to defeat the rights and equities of third persons.*' (95 C.A.2d 719.)" (6 Witkin, Summary of Cal. Law (8th ed.) § 8, p. 4321; italics added.)

*Ser-Bye* failed to examine the more fundamental problem analyzed by this court in *Sexton v. Nelson,* 228 Cal.App.2d 248 [39 Cal.Rptr. 407]. *Sexton* involved a claimed breach of covenant in the lease against assignment. This court, speaking through Justice Coughlin, said: "A clause prohibiting the assignment of a lease does not foreclose every transfer of the lessee's rights thereunder. [Citation.] *Where a transfer results merely from a change in the legal form of a business and does not affect the interests of the party protected by the nonassignable provisions of the lease, a breach of that provision does not occur.* [Citation.] In accord with the foregoing general rule, it has been held that a lessee's transfer of his lease to a corporation formed and wholly owned by him, does not violate a provision thereof against assignment. [Citations.] In the case at hand, the evidence establishes without conflict that the defendant owned all of the stock in the subject corporation; continued to operate and manage the business occupying the leased premises; and used the corporate structure only as a tax advantage device. Under the facts here, any transfer of the lease from the defendant to his corporation was a transfer in form only and not in substance. *The interest of the plaintiff was not affected thereby....* Under the facts here, in effect, the defendant continued in the exclusive use of the leased premises after he formed his corporation; continued to control, operate and manage the business occupying these premises; and, because he was exclusive owner of the corporation's shares of stock, his control was tantamount to ownership of the business. The decision in *Weintraub v. Weingart..., cited by plaintiff, is not in conflict with the foregoing conclusions as in that case there was evidence supporting an implied finding that the corporation to which the transfer had been*

*made was not wholly owned by the lessee."* (*Sexton* v. *Nelson, supra,* 228 Cal.App.2d 248, 258-260; italics added.)

A further case resolving the same fundamental problem is *Standard etc. Bldg. Co.* v. *Carpenter*, 79 Cal.App.2d 330 [180 P.2d 53]. Witkin regards the *Carpenter* case as taking a different view than that in *Ser-Bye* but feels a questionable result was reached. Witkin analyzes the case in this fashion: "The corpus of a charitable trust consisted solely of the stock of a corporation, which was lessee of valuable business property under a 99-year lease made in 1912, and which paid the income to the trustee, after deducting rent and other expenses. This method of earning money for the trust through the medium of the lessee corporation proved expensive, and, to avoid the waste of funds for corporation taxes and other such costs, an attempt was made by the lessee corporation to assign the lease to the trustee. [The appeal court held] the assignment could not be enforced, for the lease provided that an assignee must assume the obligation to pay rent, and the trust had no assets which could be used to pay rent in the event that the leased property failed to earn the bare rental. The court said: 'We are not unmindful of the fact that the present relationship of the lessor and lessee differs in no respect from that which would exist if the assignment were made to the trustee, because the corporation has no assets other than its ownership of the leasehold interest. However, this situation was not the result of judicial decree. Under the facts of this case, the judgment of the trial court assumes a power to impair the obligation of a contract, and may not stand.' (79 C.A.2d 332.)" (3 Witkin, Summary of Cal. Law (8th ed.) § 493, p. 2172.) Witkin then observes: "The court's view seems unrealistic; *the lessor could only have been benefited, not injured, by the elimination of the wasteful operation through the corporation as a conduit*; and the possibility of business property in downtown Los Angeles not earning enough to pay rent under a 1912 lease was too remote to deprive the court of power to recognize the substance rather than the form of the transaction." (*Op. cit. supra*; italics added.)

When we distill the essence from *Sexton* v. *Nelson, Weintraub* v. *Weingart*, 98 Cal.App. 690 [277 P. 752], and *Standard etc. Bldg. Co.*, as well as from those cases which as a broad legal premise prohibit the use of the corporate device to violate a contractual obligation, this conclusion emerges: If the transfer results merely in a change in the legal form of a business and does not affect the interests of the party protected by the nonassignability provisions of the lease, a breach of that

provision does not occur. (*Trubowitch v. Riverbank Canning Co.,* 30 Cal.2d 335, 344 [182 P.2d 182].)

The converse of this rule is: If the transfer results in a change in form that does adversely affect the interests of the party to be protected, to wit the lessor, then a breach of that provision does occur. Thus, Sexton and Trubowitch and like cases teach that a trial court must look to the facts, to the substance of the transaction where the corporate device is used as a means of avoiding the effect of a flat prohibition against assignment to determine whether the interest of the parties to be protected—the lessor—is harmed. Here the trial court did not in any way treat with, conform to these underlying rules before extinguishing the contractual rights of the lessor. Rather, the trial court, misled by the general, the erroneous assertions contained in *Ser-Bye, supra,* 78 Cal.App.2d 915, summarily violated the lessor's contractual rights.

The trial court made no examination into the substance of the transaction proposed by the lessee to ascertain whether the lessor's contract rights were in fact adversely affected by the device suggested and used. In any event, the summary judgment procedure would be totally inapposite for such a determination. The foregoing reasons, factual and legal, require this matter be reversed, remanded for retrial.

### III

A second and further set of rules requires the case must be reversed with direction to dismiss the proceedings. Here, the lessor is required to respond in damages because he had the temerity to contend—and on basis of sound legal advice which sustained him in his contention—that the attempted assignment was in violation of express terms of the lease prohibiting assignment or a change in occupancy without written consent. The proposed opinion offers no case, no scholarly authority to indicate that in these conceded factual circumstances the landlord does *not have a right, a legally protected interest* in making a good faith attempt to enforce the express terms of his lease. Certainly a lessor may protect an express right reserved to him in his lease by refusing to accede to the lessee's attempt to subvert that right by resorting to a legal fiction. *Ser-Bye, supra,* does not involve a question of damages for an intentional interference with a contractual relationship but rather involved an action for unlawful detainer. If *Ser-Bye* is good law, yet wholly different public policy considerations are present here. We have not yet reached a state in this society where either a landlord or tenant

may not advance a position in good faith as regards an interpretation of a document between them. There is a right and a duty upon the part of the landlord or tenant if they in good faith believe that the other party is breaching their lease to maintain that position to defend it stoutly.

The cases cited in the majority opinion involve an unjustified intermeddling with another's contractual relationships or expectancies. They authorize recovery on a tort basis from a "malicious interloper." *(Buckaloo* v. *Johnson,* 14 Cal.3d 815, 823-827 [122 Cal.Rptr. 745, 537 P.2d 865].) This is not a case of an officious intermeddler. Here the lessor and lessee have a valid, subsisting lease contract which clearly prohibits assignment without consent. The lessor has attempted to enforce in good faith the terms of his contract. Such a fact setting conceptually bears no relationship to the tort of interference with the prospective economic advantage. (1 Harper & James, Torts (1956) pp. 510-514.) In such species of interference with another's contractual relationship, the "intentional" character of the interferences, the "motive," becomes legally significant. The conceded facts here establish justification. The lessor's motives for asserting his *legal* rights are totally irrelevant.

As the learned authority Prosser states: "The defendant's breach of his own contract with the plaintiff is of course not a basis for the tort." (Prosser on Torts (4th ed. 1971) p. 934, and cases cited in fn. 9.) And Prosser further states at pages 944-945: "Where the defendant acts to further his own advantage, other distinctions have been made. If he has a present, existing economic interest to protect, such as the ownership or condition of property, or a prior contract of his own, or a financial interest in the affairs of the person persuaded, he is privileged to prevent performance of the contract of another which threatens it; and for obvious reasons of policy he is likewise privileged to assert an honest claim, or bring or threaten a suit in good faith, to exercise the right of petition to public authorities, or to settle his own case out of court." (Fns. omitted.)

I would reverse and remand the cause with directions to dismiss proceedings.

Appellants' petition for a hearing by the Supreme Court was denied January 17, 1980. Bird, C. J., and Tobriner, J., were of the opinion that the petition should be granted.