UNITED STATES CELLULAR INVESTMENT COMPANY OF LOS ANGELES, INC., Plaintiff–counter–defendant–Appellant,

v.

GTE MOBILNET, INC., erroneously sued as GTE Wireless Incorporated; Contel Cellular, Inc., erroneously sued as GTE Wireless Incorporated, Defendants–Appellees,

AirTouch Cellular, Inc., AirTouch Communication, Inc., Defendants–counter–claimants–Appellees,

Bell Atlantic Corporation, Defendant–intervenor–Appellee.

No. 00–56267.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2001

Filed Feb. 21, 2002.

Peter I. Ostroff, James M. Harris, Los Angeles, CA; Richard J. O'Brien, David B. Johnson, and Kyle D. Rettberg, Chicago, IL; Sidley & Austin, for appellant United States Cellular Investment Company of Los Angeles, Inc.

Barbara Moses, New York, NY; William A. Molinski, and Nada I. Shamonki, Los Angeles, CA; Orrick, Herrington & Sutcliffe, LLP, for appellee GTE Wireless Incorporated.

Robert M. Westberg, Morgan R. Smock, San Francisco, CA; Alan J. Droste, and Todd G. Friedland, Costa Mesa, CA; Pillsbury Winthrop LLP, for appellees AirTouch Cellular and AirTouch Communications, Inc.

David C. Scheper, Marc S. Harris, John J. Lulejian, Winston & Strawn, Los Angeles, CA; Reid M. Figle, Kevin B. Huff, Kellogg, Huber, Hansen, Todd & Evans, P.L.L.C., Washington, DC; John Thorne, Christopher M. Arfaa, Verizon Communications, Inc., Arlington, Virginia, for appellee Bell Atlantic Corporation.

Before: LEAVY, T.G. NELSON and W. FLETCHER, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge.

United States Cellular Investment Company of Los Angeles, Inc. ("U.S.Cellular") appeals the district court's summary judgment in favor of its partners in a limited partnership and their corporate parents. U.S. Cellular's core allegation is that one of the partners breached the partnership agreement by transferring or assigning its general and limited partnership interests. We agree with the district court that the agreement was not violated, and we therefore affirm.

## I. Background

This case involves the interpretation of an agreement for a limited partnership created in 1982 to provide cellular telephone service in the Los Angeles area. The limited partnership, known as the Los Angeles SMSA Limited Partnership ("Los Angeles Partnership") has three partners: U.S. Cellular, AirTouch Cellular, and GTE Wireless Incorporated ("GTE"). U.S. Cellular, the plaintiff/appellant, owns a 5.5% limited partner interest. AirTouch Cellular, a defendant/appellee, owns a 40% general partner interest and a 42.3% limited partner interest. GTE, a defendant/appellee, owns a 12.2% limited partner interest. U.S. Cellular was an original partner of the Los Angeles Partnership. AirTouch Cellular and GTE acquired their partnership interests after a series of transactions with other original partners.

The Los Angeles Partnership Agreement is based on a form agreement that was developed for structuring cellular telephone partnerships throughout the country (the "Form Partnership Agreement"). Included in the Form Partnership Agreement (and therefore in the Los Angeles Partnership Agreement) are two sections restricting the transfer of partnership interests. These sections are the focus of the appeal in this case. Section 13.1 provides that the general partner may "transfer or assign" its general partner's interest only with the consent of all other partners.[1] Section 11.1 grants each limited partner a right of first refusal before any other partner transfers its limited partnership interest.[2]

The current dispute began with the formation of a partnership called Cellco. Cellco is a joint venture between Bell Atlantic Corporation and Vodafone AirTouch PLC ("Vodafone"), the ultimate parent of Los Angeles partner AirTouch Cellular. AirTouch Communications, Inc., which owned all of the stock of AirTouch Cellular when AirTouch Cellular acquired its partnership interest, is a wholly owned subsidiary of Vodafone. In 1999, Bell Atlantic and Vodafone announced that they would enter into an Alliance Agreement to provide a wireless communications network throughout the United States. Under the Alliance Agreement, Vodafone would transfer all its United States wireless interests to Cellco. The Alliance Agreement

---

1. Section 13.1 reads:

 *Assignment.* The General Partner may transfer or assign its General Partner's Interest only after written notice to all the other Partners and the unanimous vote of all the other Partners to permit such transfer and to continue the business of the Partnership with the assignee of the General Partner as General Partner. Any such transfer or assignment shall be subject to required regulatory approval.

2. Section 11.1 reads:

 [B]efore any Limited Partner sells any part of its Partnership Interest to a non-Affiliate of such Limited Partner, it shall offer, by giving written notice to the General Partner, that interest to all of the other Partners for the price at which and the terms under which such non-Affiliate has offered in writing to pay for such interest.

required Vodafone to use reasonable efforts to transfer to Cellco direct ownership of its assets, partnership interests, or wholly owned limited liability companies. However, AirTouch Communications did not directly transfer AirTouch Cellular's partnership interests in the Los Angeles Partnership. Instead, in April 2000, it transferred all of its AirTouch Cellular stock to Cellco. Thus, AirTouch Cellular remains the 40% general partner of the Los Angeles Partnership and it retains its 42.3% limited partnership interest, but all of its stock is now owned by Cellco.

U.S. Cellular sued to enjoin the stock sale, alleging that AirTouch Cellular was a "shell entity" and that "the substance of the underlying transaction" was an asset transfer that triggered the agreement's anti-transfer provisions. During discovery, AirTouch Cellular officials testified in depositions that AirTouch Cellular remained a bona fide operating company, with thousands of employees, substantial assets, interests in wireless systems throughout California, and general partnership interests in other communities in addition to Los Angeles. The district court denied U.S. Cellular's motion for a Temporary Restraining Order, holding that under the plain language of the Partnership Agreement, the anti-transfer provisions applied only to direct transfers of the partnership interest itself, not to the transfer of stock in the company owning the partnership interest. After unsuccessfully appealing the denial of the TRO, U.S.

Cellular amended its complaint to seek damages. Under the amended complaint, it no longer asserts that AirTouch Cellular is a "shell," but it continues to claim that the change of ownership of the stock of the general partner requires consent and first refusal under the anti-transfer provisions. It also alleges that AirTouch Cellular "withdrew" as general partner by "abdicating in favor of Cellco." This withdrawal, it argues, triggered Section 13.2 of the agreement, which states that withdrawal causes the dissolution and termination of the partnership and requires that the withdrawing general partner provide the other partners an opportunity to "designate a substitute General Partner" prior to its withdrawal.[3]

The district court granted summary judgment in favor of the defendants/appellees, holding that the agreement was not subject to the construction urged by U.S. Cellular. We agree with the district court.

## II. Standard of Review

 A grant of summary judgment is reviewed de novo. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir.2001); *Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 490 (9th Cir. 2000) (decision to grant summary judgment on a contract claim is reviewed de novo). The reviewing court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of

**3.** Section 13.2 reads:

Withdrawal of the General Partner will cause the dissolution and termination of the Partnership in accordance with the terms of Article XIV except in the case of assignments as provided in Sections 3.1 and 13.1. The General Partner may not withdraw until it has given the other Partners ninety days notice. If during that time the other Partners unanimously designate a substitute General Partner who will agree both to purchase the General Partner's interest, and its Limited Partner's interest, on terms acceptable to the General Partner and continue the business of the Partnership, subject to required regulatory approval, the General Partner agrees to transfer or assign its Interests to the designated General Partner. The General Partner shall not unreasonably withhold its acceptance of terms for purchase of its Partnership Interest proposed by the substitute General Partner.

material fact and whether the district court correctly applied the relevant substantive law. *Clicks Billiards, Inc.*, 251 F.3d at 1257. We also review de novo the determinations of whether contract language is ambiguous, *Tyler v. Cuomo*, 236 F.3d 1124, 1134 (9th Cir.2000), and "[w]hether the written contract is reasonably susceptible of a proffered meaning." *Brinderson Newberg Joint Venture v. Pacific Erectors*, 971 F.2d 272, 277 (9th Cir. 1992).

■ The district court's exclusion of evidence at summary judgment is reviewed for abuse of discretion. *Block v. City of Los Angeles*, 253 F.3d 410, 416 (9th Cir.2001). "Discretion is abused when the judicial action is 'arbitrary, fanciful or unreasonable' or 'where no reasonable man [or woman] would take the view adopted by the trial court.'" *Golden Gate Hotel Ass'n v. City & County of San Francisco*, 18 F.3d 1482, 1485 (9th Cir.1994) (internal citation omitted). The district court's decision not to permit additional discovery pursuant to Federal Rule of Civil Procedure 56(f) also is reviewed for an abuse of discretion. *Chance v. Pac–Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 (9th Cir.2001). Abuse of discretion is found only "if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment." *Qualls v. Blue Cross of Cal.*, 22 F.3d 839, 844 (9th Cir.1994).

## III. Discussion

The key issue in this case is the proper construction of the anti-transfer provisions in the Los Angeles Partnership Agreement. U.S. Cellular argues these provisions are broad enough to encompass the transfer of AirTouch Cellular's stock to Cellco. Specifically, it argues that the district court erred in (A) granting summary judgment based on its conclusion that the agreement would not support the construction set forth by the plaintiff; (B) striking declarations submitted by U.S. Cellular purporting to provide extrinsic evidence of the parties' intent; and (C) denying U.S. Cellular's Rule 56(f) application to take additional discovery that it claimed would support its construction of the provisions. We consider each argument in turn.

### A. No Genuine Issue of Material Fact as to Contract Construction

■ The Los Angeles Partnership Agreement provides that California law governs the contract. Applying California law, we hold that the district court correctly found that there is no genuine issue of material fact as to the proper construction of the contract provisions because the intent of the parties, as expressed in the plain language of the agreement, was not to restrict the legitimate sale of the stock of a corporate partner.

1

■ Under California law, the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting. Cal. Civ.Code § 1636; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.App.4th 445, 474, 80 Cal.Rptr.2d 329 (1998). When a contract is reduced to writing, this intent "is to be ascertained from the writing alone, if possible." Cal. Civ.Code § 1639; *see also Brinton v. Bankers Pension Servs., Inc.*, 76 Cal.App.4th 550, 559, 90 Cal.Rptr.2d 469 (1999). Under the plain language of the agreement, the anti-transfer provisions are triggered by the transfer of a partnership interest, either that of a general or that of a limited partner. Section 13.1 restricts the transfer or assignment of a "General Partner's Interest," and Section

11.1 restricts the sale of a "Partnership Interest." Nothing in either section restricts the sale of stock of an owner of a general or limited partnership interest.

U.S. Cellular asserts that the parties intended that Sections 13.1 and 11.1 restrict "indirect" transfers of the partnership interest, and that the sale of stock constitutes such an indirect transfer. California courts have already held that the transfer of stock is not the same thing as a transfer of the assets of that corporation. *See Richardson v. La Rancherita, Inc.*, 98 Cal.App.3d 73, 79, 159 Cal.Rptr. 285 (1979); *Ser-Bye Corp. v. C.P. & G. Markets*, 78 Cal.App.2d 915, 918–21, 179 P.2d 342 (1947). U.S. Cellular seeks to distinguish these cases on the ground that the assets at issue were leases, not partnership interests as in this case. Because the assignment and transfer of a lease implicate legal restrictions unique to the law of real property, it argues, these cases cannot be read as establishing any general principle that a stock transfer does not constitute an asset transfer.

We disagree. The analysis in *Ser-Bye* and *Richardson* hinges not on the nature of the specific assets involved in the transfer, but on the nature of the entity owning the assets and with whom the contract was made. That is, the California courts in these cases recognized that when a party enters into an agreement with a corporation, it is presumed to do so with an understanding of the nature of the corporate form. In effectuating the reasonable expectation of the parties, the law presumes that if the parties intend to limit the corporation's ability to engage in a legitimate and normal corporate transaction, such a limitation will be specified.

The *Ser-Bye* court held that "[w]hen ... it was covenanted that the lessee should not 'assign the leasehold estate,' the lease as an entirety was meant, and not merely shares of stock in the lessee corporation." 78 Cal.App.2d at 920, 179 P.2d 342 (internal citation omitted). In so concluding, the court emphasized that

> [h]ad the parties to the lease intended that the sale and transfer by one or more stockholders in the lessee corporation to other persons of one or more of their shares of stock therein was deemed to be an assignment or attempted assignment of the lease itself, such fact should have been expressed in the lease in clear and unequivocal language.

*Id.* at 920–921, 179 P.2d 342.

In *Richardson*, the plaintiff corporation, Breg, leased premises for a restaurant from La Rancherita. 98 Cal.App.3d at 77, 159 Cal.Rptr. 285. When Breg sought to sell its restaurant assets and to assign the lease, La Rancherita objected, pointing to a provision in the lease that gave it the right to consent or refuse consent to any such assignment. *Id.* Breg and the would—be purchaser then "decided to revise their agreement to by—pass the need for La Rancherita's consent to the assignment." *Id.*

The new deal called for the sale of all of Breg's capital stock to the purchaser. La Rancherita claimed that consent was still required because the stock sale "was merely a change of form to circumvent the consent provision[.]" *Id.* at 78, 159 Cal. Rptr. 285. Breg and its shareholders sued seeking a declaratory judgment permitting the stock transfer to proceed, and prevailed in the trial court. The California appellate court affirmed, noting that the trial court had been "asked to bar the transfer of shares of common stock in a valid corporation, permissible under corporate law, solely because of a lease provision prohibiting assignment of the lease, but containing no restraints on transfer of stock ownership." *Id.* at 79, 159 Cal.Rptr.

285. The trial court, it held, had properly "recogniz[ed] the separateness of the corporate form." *Id.* Like the court in *Ser-Bye,* the *Richardson* court emphasized that "[t]he parties, at the time of their negotiations, were apparently satisfied with a corporation as lessee," and thus could not be presumed to have intended that the transfer of that corporation's stock be restricted. *Id.*

Similarly, when U.S. Cellular entered into its partnership agreement with Air-Touch Cellular, it did so with full awareness that AirTouch Cellular was a corporation. Nothing in the partnership agreement restricts the sale of the corporate stock of the partners. As the district court correctly observed, the parties here were highly sophisticated corporations represented by experienced counsel. Had the partners intended that the sale of stock of a corporate partner be restricted, such intent could easily have been stated. Given the clear California law distinguishing a transfer of assets from a sale of stock, the Los Angeles partners could not have intended provisions restricting the sale of assets to restrict the sale of stock. The district court was correct in so holding.

### 2

In support of its argument that Sections 13.1 and 11.1 were intended to restrict stock sales, U.S. Cellular asserts that "[o]ther courts considering the anti-transfer provisions of the cellular Form Partnership Agreement have had little difficulty finding a reasonable construction that extends those provisions to transactions designed to evade their reach." It relies on two cases for this proposition. *See Oregon RSA No. 6, Inc. v. Castle Rock Cellular,* 840 F.Supp. 770 (D.Ore.1993), *aff'd in part and rev'd in part,* 76 F.3d 1003 (9th Cir.1996), and *Boise City M.S.A.*

§ *v. Telephone & Data Systems,* No. 88–2–11280 (Wash. Superior Ct. Jan. 17, 1990) (unpublished opinion letter). These two cases did, indeed, hold that sale of stock in corporate partners was restricted by the anti-transfer provisions of the Form Partnership Agreement. In *Oregon RSA,* the court held that the sale of the stock of a limited partner without offering the right of first refusal violated the covenant of good faith and fair dealing implied in the partnership agreement. *See* 840 F.Supp. at 776. In *Boise City MSA,* the court held that a stock sale was designed as a subterfuge to avoid the anti-transfer provisions and was therefore a violation of the partnership agreement. *See Boise City MSA,* No. 88–2–11280 at 4.

*Oregon RSA* applied Oregon law. *Oregon RSA,* 76 F.3d at 1005. It is not clear whether the Washington court in *Boise MSA* applied Washington law or some other law. However, even if we were to assume that *Oregon RSA* and *Boise MSA* accurately reflect California law, these cases would not support U.S. Cellular's position in this case. The facts of *Oregon RSA* and *Boise MSA* were different from the facts in this case in one crucial respect: The stock transfers in those cases were made using one or more "shell" entities. The shells were corporations created purely for the purposes of the subterfuge. They owned no significant assets aside from the partnership interest, and they had no purpose except to serve as mechanisms to avoid the restrictions of the anti-transfer provisions. *Oregon RSA,* 840 F.Supp. at 775; *Boise City MSA,* No. 88–2–11280 at 2–3. That is not the case here. AirTouch Cellular, whose stock was sold, existed as a corporation prior to the stock sale and continues to have a genuine corporate existence after the sale. Indeed, U.S. Cellular has now abandoned its argument that AirTouch Cellular is a shell. Cellco, which acquired the AirTouch Cellu-

lar stock, is a bona fide ongoing corporate partnership between Vodafone and Bell Atlantic. U.S. Cellular has never alleged that Cellco is a shell.

This distinction is important, as both *Oregon RSA* and *Boise City MSA* acknowledged. Far from being broad condemnations of the use of stock sales to avoid the anti-transfer provisions, these cases both emphasize that the use of a shell entity as the stock purchaser is the linchpin of their holdings that the partnership agreements were violated. Two full pages of the district court's opinion in *Oregon RSA* are devoted to a discussion of the legal prohibition on using the corporate structure to avoid contractual obligations and frustrate the legitimate expectations of other parties. *See* 840 F.Supp. at 776. ("Had defendants contracted to sell the partnership interest to PTCI directly, this transaction would unquestionably have triggered the right-of-first refusal clause in the Partnership Agreement. However, defendants have sought to circumvent that restriction by conveying not just the partnership interest but also the holding companies that Cellular, Inc. created as repositories for that partnership interest.") *Boise City MSA* states that "[a]s a general proposition," the owner of a corporate partner may sell the stock of that partner "without triggering first refusal rights," but the court held the general rule inapplicable because the shell entity that purchased the stock was created "purely for the purpose of providing the vehicle" by which the partnership interest could be purchased. *Boise City MSA*, No. 88-2-11280 at 2.

Had the stock sale in this case been a sale to or by a shell entity, we would have a very different case. But Cellco, the purchaser, is not a shell, and AirTouch Cellular, whose stock it purchased, is not a shell. The sale of AirTouch Cellular's stock to Cellco was no shell game. Rather, it was a rather standard corporate transaction. Nothing in the partnership agreement suggests that the Los Angeles partners intended to prevent an otherwise legitimate corporate stock sale, such as this one, merely because it transferred effective ownership of a partnership interest without traveling through the consent provisions of the agreement.

### 3

We do not believe it is necessary to look beyond the plain language of the partnership agreement to determine the meaning that the parties intended for the anti-transfer provisions. If it were, however, the course of performance of that agreement further demonstrates that the partners never intended that transfers of stocks of a corporate partner would trigger the anti-transfer provisions of the agreement.

Under California law, a court may consider the subsequent acts and conduct of the parties in the execution of the contract in order to determine the intent of those parties. Cal.Code Civ. P. § 1856(c); *see also City of Atascadero*, 68 Cal.App.4th at 445, 80 Cal.Rptr.2d 329. "The construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the court." *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 296–97, 85 Cal. Rptr. 444, 466 P.2d 996 (1970) (internal citation and quotation omitted). Where uncertainty arises concerning a provision of an agreement, a trial court may ask how the parties themselves understood the language; when the parties have acted upon that understanding before the dispute arose, a finding that the agreement should

be construed as acted upon will not be disturbed by the reviewing tribunal. *See Eggert v. Pacific States Sav. & Loan,* 57 Cal.App.2d 239, 242, 136 P.2d 822 (1943).

In the 17–year history of the Los Angeles Partnership prior to the sale of the AirTouch Cellular stock to Cellco, ownership of partnership interests was transferred on a number of occasions. Each time, the transfer was accomplished by a transfer of ownership of a partner. No vote of the limited partners was ever solicited. U.S. Cellular never challenged any of the transfers as inconsistent with the anti-transfer provisions. At least two of these transactions were essentially identical in form and effect to the stock sale that U.S. Cellular now contests. One was a 1999 transfer in which Vodafone acquired the stock of AirTouch Communications and thereby obtained control of Los Angeles general partner AirTouch Cellular; the other was a 1991 transfer in which GTE acquired the stock of Contel Cellular, a successor in interest to an original Los Angeles limited partner, Continental Mobilcom.

Indeed, U.S. Cellular, the plaintiff in this case, has taken the position in other litigation that the anti-transfer provisions do not apply to sales of corporate stock of a partner. In *Boise MSA,* U.S. Cellular vigorously asserted that the sale of stock cannot trigger a right of first refusal under the anti-transfer provisions of the Form Partnership Agreement because a stock sale is not the same thing as a transfer of ownership of the company's assets. At a minimum, this prior litigation stance substantially undermines U.S. Cellular's argument in this case that the "the only reasonable construction" of the same anti-transfer provisions is the exact opposite of the construction for which it previously argued.

**B. The District Court's Refusal to Consider Parol Evidence**

■ U.S. Cellular argues that even if the partnership agreement, on its face, unambiguously allows the stock sale, the district court still erred in granting summary judgment because it declined to consider extrinsic parol evidence that supports an alternative reading of the anti-transfer provisions. We hold that the district court did not abuse its discretion in excluding the extrinsic evidence.

U.S. Cellular asked the district court to consider the declaration of Martin C. Ruegsegger, a former employee of one of the original Los Angeles partners, Advanced Mobile Phone Systems. Ruegsegger's declaration states that he was involved in the drafting of the Form Partnership Agreement and asserts that the drafters of the agreement intended that the anti-transfer provisions be triggered by transactions such as the stock sale in this case. U.S. Cellular also asked the court to consider the declaration of Leroy T. Carlson, the chairman of the parent company of U.S. Cellular. Carlson's declaration describes the company's decision to enter the Los Angeles Partnership and states that the company had a motivation to preclude indirect transfers via stock sales.

■ Where, as here, the contract at issue is fully integrated, California law allows the admission of parol evidence only if it is (1) "relevant" to prove (2) "a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 37, 69 Cal. Rptr. 561, 442 P.2d 641 (1968). The district court held that the declarations put forth by U.S. Cellular lacked relevance, and that the partnership agreement is not reasonably susceptible to the meaning asserted by U.S. Cellular.

U.S. Cellular argues that the district court failed to follow the process set forth in *Pacific Gas* for determining the admissibility of this parol evidence. Under *Pacific Gas,* a court is required to engage in a preliminary consideration of credible evidence offered to prove the intention of the parties, such as "testimony as to the circumstances surrounding the making of the agreement ... including the object, nature and subject matter of the writing ... so that the court can place itself in the same situation in which the parties found themselves at the time of contracting." *Pacific Gas,* 69 Cal.2d at 40, 69 Cal.Rptr. 561, 442 P.2d 641 (internal quotation and citation omitted). Then, if the court decides, after considering this evidence, that the language of the contract is "fairly susceptible to either one of the two interpretations contended for, extrinsic evidence relevant to prove either of such meanings is admissible." *Id.* (internal quotations and citations omitted). The district court did exactly this. It provisionally received the Ruegsegger and Carlson declarations without actually admitting them, then determined that the anti-transfer provisions were not fairly susceptible to the construction U.S. Cellular urged, and then held this extrinsic evidence inadmissible because, as a matter of law, the Partnership Agreement provisions are not susceptible to U.S. Cellular's proposed reading. We agree with the district court's construction of the language of the provisions, and with its conclusion that the declarations should not have been admitted. Because we agree with the district court on this ground, we do not need to discuss its additional conclusion that the declarations were, in any event, irrelevant.

### C. Denial of U.S. Cellular's Rule 56(f) Application

Finally, U.S. Cellular appeals the district court's denial of its request for additional time for discovery under Federal Rule of Civil Procedure 56(f). In support of the request, U.S. Cellular argued that the Form Partnership Agreement was the basis for the Los Angeles Partnership Agreement, and identified ten individuals affiliated with the appellees who had participated in the Form Partnership Agreement negotiations. It sought additional discovery time in order to obtain depositions of the individuals, explaining that such depositions would allow presentation of the full circumstances surrounding the agreement. The court denied the request for continuance.

 Rule 56(f) provides that "[s]hould it appear from the affidavit of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court ... may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." A Rule 56(f) applicant is entitled to relief only if he or she shows, among other things, that the discovery would uncover specific facts which would preclude summary judgment. *Maljack Prods. v. GoodTimes Home Video Corp.,* 81 F.3d 881, 888 (9th Cir.1996). Because the agreement's anti-transfer provisions are not susceptible to U.S. Cellular's construction as a matter of law, further discovery could not have uncovered such facts. The district court therefore did not abuse its discretion in denying the application.

 U.S. Cellular also sought relief under Rule 56(f) for discovery on a separate claim. In its Second Amended Complaint, it alleged that AirTouch Cellular "withdrew" as general partner of the Los Angeles Partnership when it transferred its stock and "abdicated control" in favor of Cellco. It requested additional discovery time under Rule 56(f) to determine "the

facts concerning the current management of the partnership" and "the plans for the market going forward." The district court, which held that the defendants were entitled to summary judgment on the withdrawal claim, also rejected U.S. Cellular's Rule 56(f) application for continuing discovery regarding the claim.

■ That denial was proper because a change in ownership of a general partner does not constitute "withdrawal" of a general partner under California law. Thus, U.S. Cellular could not adequately demonstrate how facts related to that change in ownership would preclude summary judgment. *See Qualls*, 22 F.3d at 844. U.S. Cellular argues that Cal. Corp.Code § 15642(a), under which a general partner ceases to be a general partner when it "withdraws from the limited partnership as provided in Section 15662," applies in this case. Section 15662 lists ways in which withdrawal may be effectuated, none of which even suggest that a transfer of stock ownership constitutes withdrawal. *See* Cal. Corp.Code § 15662. Section 15662 states that "[a] partnership agreement *may* provide that a general partner may withdraw from a limited partnership at the time or upon the happening of events specified in the partnership agreement" and that a general partner "*may* withdraw from a limited partnership at any time by giving written notice to the other partners." *Id.* (emphasis added). U.S. Cellular argues that the statute's use of the permissive term "may" indicates that it is not defining or describing the exclusive circumstances by which a general partner may withdraw. But the question is not whether AirTouch Cellular "may" withdraw from the partnership in a certain way; the question is, rather, whether it

has done so. In the absence of any explicit agreement among the parties that a sale of stock in the general partner effectuates a withdrawal, and in the absence of any background rule of law to that effect, we hold that AirTouch Cellular has not withdrawn from the partnership.

Conclusion

For the forgoing reasons, the judgment of the district court is

AFFIRMED.